## GOWEN v. HARLEY.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1893.)

No. 249.

1. STATUTES — CONSTRUCTION — SPECIAL CHARTER AND SUBSEQUENT GENERAL ACT.
    Privileges granted by a special act or charter are not affected by subsequent general legislation on the same subject; but the special charter and general laws must stand together, the one as the law of the particular case, the other as the general law of the land. State v. Stoll, 17 Wall. 425, followed.

2. SAME—REPEAL BY IMPLICATION.
    A later act does not repeal an earlier one by implication unless their provisions are clearly inconsistent and repugnant.

3. FEDERAL COURTS — SPECIAL JURISDICTION IN INDIAN TERRITORY—ACT FEB. 18, 1888—SUITS AGAINST CHOCTAW COAL & RAILWAY CO.
    Act Feb. 18, 1888, § 8, (25 Stat. 35,) conferring upon the circuit and district courts for the western district of Arkansas and the northern district of Texas concurrent jurisdiction of all suits between the Choctaw

Coal & Railway Company and the inhabitants of the Indian nations or tribes through which that railway should run, is not repealed by Act March 1, 1889, (25 Stat. 783, c. 333,) establishing a court in the Indian Territory, nor by Act May 2, 1890, (26 Stat. 81, c. 182,) enlarging the jurisdiction of that court. Eckloff v. District of Columbia, 10 Sup. Ct. Rep. 752, 135 U. S. 240, distinguished.

4. SAME—SUITS AGAINST RECEIVERS.

Act Feb. 18, 1888, § 8, (25 Stat. 35,) gives the circuit and district courts for the western district of Arkansas and the northern district of Texas concurrent jurisdiction of all suits between the Choctaw Coal & Railway Company and the inhabitants of the Indian nations or tribes through which the railway runs. Held, that such jurisdiction extends also to suits between the receivers of the railway company and the inhabitants of the said nations and tribes.

5. SAME—PROOF OF INHABITANCY.

Under Act Feb. 18, 1888, § 8, (25 Stat. 35,) evidence that plaintiff lived with his wife in his house in the territory of the Choctaw nation when the cause of action arose, and for a year thereafter, is sufficient proof of inhabitancy to give the circuit court for the western district of Arkansas jurisdiction of a suit wherein the Choctaw Coal & Railway Company is defendant, whether plaintiff dwelt there rightfully or wrongfully.

6. MASTER AND SERVANT—MASTER'S DUTY TO FURNISH SAFE TOOLS.

Plaintiff and another servant of defendant were charged with the daily duty of moving a box weighing 250 pounds a distance of 5 feet from one railway car to another, the surface of the earth between the cars being smooth and hard, and the floors of the cars at the height of the shoulders of a man standing between them. Plaintiff had asked for and been promised skids whereon to slide the box from one car to the other, but he made request merely from considerations of convenience, and not because he thought any other method of moving the box dangerous. Held, that the failure of the master to furnish skids was not negligence making him liable for injuries suffered by the plaintiff in moving the box.

7. SAME—RISKS ASSUMED BY SERVANT.

Plaintiff had performed the duty of moving the box daily for three months before his injury, but the officers of the defendant railway company had never assisted in such moving, and had seldom seen it done. Held, that the risks of moving the box were assumed by plaintiff.

8. SAME—INJURY TO SERVANT BY HIS OWN NEGLIGENCE.

Instead of standing on the ground and lifting the box on their shoulders, plaintiff and his fellow servant, one standing in each car, swung the box across from one car to the other, with the aid of a rope tied to one of the handles. One of the ropes became untied, causing plaintiff to fall upon his head. Held, that plaintiff's injury was caused by his own negligence and that of his fellow servant, and that the master was not liable therefor.

9. SAME—ASSUMPTION OF RISKS—PROMISE TO FURNISH APPLIANCES.

A servant who is employed to perform a simple act of manual labor, the risks of which are obvious, cannot escape from his assumption of those risks by proof that the master promised to furnish him tools by the use of which his work could be done in a different way, or more conveniently, or even more safely, if it could be done with reasonable safety without the tools.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

At Law. Action by Harrie Harley against Francis I. Gowen and E. D. Chadick, receivers of the Choctaw Coal & Railway Company, for personal injuries received by plaintiff while in defendant's service. Judgment was given for plaintiff. Defendant Gowen brings error. Reversed.

J. W. McLoud, for plaintiff in error.

Joseph M. Hill, (L. P. Sandels, on the brief,) for defendant in error.

Before SANBORN, Circuit Judge, and SHIRAS and THAYER, District Judges.

SANBORN, Circuit Judge. On June 20, 1891, Harrie Harley, the defendant in error, fell out of the door of a car of the Choctaw Coal & Railway Company, hereafter called the Choctaw Railway Company, at South McAlester, in the Indian Territory, while he was endeavoring to move a train box from another car into the one from which he fell. He struck on his head and hurt himself. He was an employe of the plaintiff in error. For his injury he brought this action against Francis I. Gowen, the plaintiff in error, hereafter called the defendant, and E. D. Chadick, as receivers of the Choctaw Railway Company. Gowen was the acting receiver, and alone answered. There was a trial by jury, a verdict for the plaintiff, and a judgment upon it. The writ of error in this case was sued out to reverse this judgment.

· This was the case: About the 1st of February, 1891, the plaintiff was employed by the defendant to clean cars at South McAlester. It became his duty, with the assistance of the porter, to transfer from one car to another a train box that weighed about 200 or 250 pounds, and a safe, at about 6 o'clock in the evening of each day. Each end of the train box was provided with a handle. There was a door on the side of each of the cars, and the cars were so placed when the transfer was made that these doors were opposite each other, and about five feet apart. The surface of the ground between the cars at the place where the transfer was effected was hard and smooth, and the shoulders of a man standing upon it were about the height of the floors of the cars. When the plaintiff entered upon this employment the box was transferred in this manner: There was a double bellrope about 18 inches long attached to one of the handles of the box. The porter would shove the box part of the way out the doorway of the car, and take hold of the rope. The plaintiff would stand in the doorway of the car opposite, take hold of the jamb of the door with one hand, seize the handle of the box with the other, and the two men would then swing it across into the car in which the plaintiff stood. As they were in the act of swinging it over in this way on June 20, 1891, the rope came untied, and the plaintiff fell out of his doorway, and was injured. The rope was attached to the handle of the box by the plaintiff or the porter. It was not one of the appliances furnished by the defendant. The box had been transferred in this way before the plaintiff entered upon this employment. A few days after he commenced the discharge of his duties he asked the master mechanic of the defendant for some skids to slide the box and safe across upon, and the next day he was supplied with a couple of planks, which he used until some time in May, when he was taken sick, and lost them. He returned to this work on May 20, 1891, and transferred the safe and box by swinging them across daily

from that time until the accident, June 20, 1891. Within three days after he returned, and six or seven times in all between May 20th and June 20th, he asked the proper officers of the defendant for skids, and they promised to furnish them. The last promise was made within three days of the accident. The only reason he asked for the skids was that he thought it would be easier to slide the safe and box over upon them than to swing them over. He did not consider it at all dangerous to transfer them without skids or planks before the accident. The assignments of error go to the jurisdiction of the court below and to the sufficiency of the evidence.

The jurisdiction of the circuit court for the western district of Arkansas over this action rests upon the eighth section of the act of congress entitled "An act to authorize the Choctaw Coal and Railway Company to construct and operate a railway through the Indian Territory, and for other purposes," approved February 18, 1888, (25 Stat. 35.) This act contains 13 sections. Section 1 authorizes the company to construct a railroad, telegraph, and telephone line through the Indian Territory; sections 2, 3, and 5 authorize it to take and use a right of way and ground for stations in that territory, and provide a method of fixing and paying the damages for the taking; section 4 regulates the rates to be charged by the company for transportation of freight, passengers, and mails; section 6 provides for filing maps showing the location of the railroad, and their approval by the secretary of the interior, and limits the time within which the company must commence work upon the line approved; section 7 permits the employes of the company to reside in the territory, under certain restrictions; section 9 provides when the road shall be completed, and what crossings and bridges it shall maintain; section 10 makes it a condition of the acceptance of the right of way that the company will make no effort to change the tenure by which the Indians hold their land, or to secure any land from them; section 11 provides that all mortgages made by the company shall be recorded with the secretary of the interior, and that the record shall be notice thereof; section 12 reserves to congress the right to repeal or amend the act; section 13 prohibits the assignment of the right of way before the construction of the road; and section 8 provides:

"That the United States circuit and district courts for the western district of Arkansas and the northern district of Texas, and such other courts as may be authorized by congress, shall have, without reference to the amount in controversy, concurrent jurisdiction over all controversies arising between said Choctaw Coal and Railway Company, and the nations and tribes through whose territory said railway shall be constructed. Said courts shall have like jurisdiction, without reference to the amount in controversy, over all controversies arising between the inhabitants of said nations or tribes and said railway company; and the civil jurisdiction of said courts is hereby extended within the limits of said Indian Territory, without distinction as to citizenship of parties, so far as may be necessary to carry out the provisions of this act."

The jurisdiction of the court below is challenged on three grounds:

First. That section 8 of the Choctaw Railway Company's charter is repealed by implication by the acts of March 1, 1889, establishing

a court in the Indian Territory, (25 Stat. 783, c. 333; Supp. Rev. St. 670,) and of May 2, 1890, providing a temporary government for the territory of Oklahoma, and enlarging the jurisdiction of the United States court in the Indian Territory, (26 Stat. 81, c. 182; Supp. Rev. St. 720;) but it is admitted that there is no express repeal or reference in the subsequent legislation to this section.

Second. That, if this section is not repealed, and the court below still has jurisdiction of actions by or against the Choctaw Railway Company arising in the Indian Territory, it has no jurisdiction of actions against the receiver of the railway company. And,

Third. That, although the plaintiff alleged that he was an inhabitant of the Choctaw nation at the time of the commencement of this action, the defendant denied this allegation, and there was no evidence in support of it.

To sustain his first proposition, the counsel for defendant quotes the rule as to repeals by implication announced by Mr. Justice Field in delivering the opinion of the supreme court in U. S. v. Tynen, 11 Wall. 88, 92, viz.: "When there are two acts on the same subject, the rule is to give effect to both, if possible. But if the two are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet, if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was a substitute for the first act, it will operate as a repeal of that act;" and he relies upon the decision in that case, and the decisions in Eckloff v. District of Columbia, 135 U. S. 240, 242, 243, 10 Sup. Ct. Rep. 752, and District of Columbia v. Hutton, 143 U. S. 18, 12 Sup. Ct. Rep. 369, to support his contention that section 8 of the special charter is repealed by the later acts referred to.

In U. S. v. Tynen two acts relating to the subject of violations of naturalization laws had been passed at different dates. The later provided for all the violations referred to in the earlier, but imposed different or additional penalties therefor, and contained new provisions. In Eckloff v. District of Columbia, congress had passed an act in 1861 creating a metropolitan police system for that district and establishing a board, which was given control of the police force, but was prohibited from removing policemen except for cause and after hearing. In 1878 congress passed an act entitled "An act providing a permanent form of government for the District of Columbia," which vested the general administration of the affairs of the district, including the control of the police, in a commission, abolished the former police board, and gave the commission the power to remove policemen without cause or hearing. The supreme court held that the act of 1878 was in the nature of an organic act establishing a permanent government for the district; that it covered the whole subject of the former act, was clearly repugnant to it, and that the earlier act must be deemed to be repealed by the later. In District of Columbia v. Hutton the same organic act of 1878 was held to have had a like effect upon the act of March

2, 1867, relating to the qualifications of policemen. It will be noticed that in each of these cases the decision rests upon the facts that the acts were general in their nature, that in each case the later act covered the entire subject of the earlier one, and that in each case the provisions of the later act were so repugnant to those of the earlier that both could not stand together.

In the case before us the section which is alleged to be repealed by implication is a provision of a special act in the nature of a charter whose entire purpose and effect is to grant certain privileges to and to impose certain restrictions upon the Choctaw Railway Company. The acts of March 1, 1889, and May 2, 1890, which it is claimed repealed this section, are general laws establishing a court in the Indian Territory, defining, and afterwards enlarging, its jurisdiction, and providing a temporary government for the territory of Oklahoma. These acts comprise 72 sections. They are too long to be abstracted here. It is sufficient to say that they treat generally of the court in the Indian Territory and the government of Oklahoma Territory, but nowhere cover or refer to the rights or privileges of the Choctaw Railway Company. They do not refer, directly or indirectly, to the subject covered by its charter.

Again, they contain no provisions repugnant to or inconsistent with the section of that charter which confers jurisdiction upon the court below. That section provides that the circuit courts of the western district of Arkansas and the northern district of Texas, and such other courts as may be authorized by congress, shall have concurrent, not exclusive, jurisdiction over actions by and against this railway company. The acts of March 1, 1889, and May 2, 1890, confer jurisdiction over such actions arising in the Indian Territory upon the United States court in that territory, but nowhere attempt to make that jurisdiction exclusive. In the act of May 2, 1890, it is provided by section 29 (Supp. Rev. St. 732) that the court in the Indian Territory shall "have and exercise within the limits of the Indian Territory jurisdiction in all civil cases in the Indian Territory except cases over which the tribal courts have exclusive jurisdiction;" and it is provided by section 30 "that for the purpose of holding terms of said court said Indian Territory is hereby divided into three divisions, * * * and all civil suits shall be brought in the division in which the defendant or defendants reside or may be found." These are the provisions cited and chiefly relied upon to establish the inconsistency of this legislation with the provision of the special charter conferring jurisdiction on the court below, and to work its repeal. They fail to accomplish this purpose. An act conferring jurisdiction over a certain class of actions upon one court is not repealed by a subsequent act conferring like jurisdiction upon another court. The effect of the later act is simply to confer concurrent jurisdiction, (Fidelity Trust Co. v. Gill Car Co., 25 Fed. Rep. 737; In re Opening Twenty-Eighth St., 102 Pa. St. 140,) and the provision that all civil suits shall be brought in the division in which the defendant resides clearly has

no reference to any other suits than those brought in the United States court in the Indian Territory.

Thus it appears that these later acts fulfilled none of the conditions required to effect a repeal by implication under the rule announced by Mr. Justice Field in U. S. v. Tynen, supra, and here invoked. They are not upon the same subject as the special charter of the Choctaw Railway Company; they are not repugnant to any of the provisions of that charter; they do not cover the whole subject embraced in that charter, but relate to subjects foreign to it; and they constitute general legislation, while the charter is a special act, relating exclusively to the privileges and liabilities of a single corporation. Our conclusion is that they do not repeal the provision of the special act giving jurisdiction of actions of the character of the one at bar to the court below, and we base this conclusion upon the following well-settled rules governing repeals by implication:

·First. Privileges granted by a special act or charter are not affected by general legislation on the same subject, but the special charter and general laws must stand together; the one as the law of the particular case, and the other as the general law of the land. Dill. Mun. Corp. § 54; State v. Stoll, 17 Wall. 425, 436, where the supreme court held that a provision in the charter of a state bank that its bills should be receivable in payment of all taxes and moneys due the state was not repealed by a subsequent general law to the effect that all taxes should be paid in specie or the bills of specie paying banks, and that the bills of the state bank must still be received in payment of taxes although it was no longer paying specie.

Second. Repeals by implication are not favored, and where the sections of earlier and later acts can by any reasonable construction stand together, they must so stand. The later act does not repeal the earlier unless their provisions are clearly inconsistent or repugnant. The Distilled Spirits, 11 Wall. 356, 365; Henderson's Tobacco, Id. 652, 658; Daviess v. Fairbairn, 3 How. 636, 644; U. S. v. Walker, 22 How. 299, 311; McCool v. Smith, 1 Black, 459, 470; State v. Stoll, 17 Wall. 431.

· The second proposition of defendant's counsel, that if the court below has jurisdiction of actions against the Choctaw Railway Company it has none of actions against its receivers, is untenable. The receivers hold and operate the railroad of this company by direction of the court, but, so far as their business relations and liabilities are concerned, they are simply the representatives of the company and its creditors. This action arose from their operation of this railroad. It is the property of the railroad company and its creditors, and not that of the receivers, from which the judgment recovered must be paid if it be paid at all. The real parties in interest are the company and its creditors. The receivers are but nominal parties, without pecuniary interest or personal liability, and, so far as the jurisdiction of the court, and the rules that measure the liability of the property in their hands to the plaintiff, are

concerned they stand in the shoes of the company. Hornsby v. Eddy, (opinion filed in this court May 29, 1893,) 56 Fed. Rep. 461; McNulta v. Lochridge, 141 U. S. 327, 332, 12 Sup. Ct. Rep. 11; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. Rep. 905.

Nor can the contention that there was no evidence that the plaintiff was an inhabitant of the Choctaw nation be sustained. An inhabitant of a nation is one who there dwells,—who has his domicile in that nation. There was evidence that the plaintiff lived with his wife in his house in the territory of the Choctaw nation at the time of this accident, and for a year thereafter. From this the jury might properly infer that he continued to live there until after the commencement of the action. Whether he dwelt there rightfully or wrongfully we will not now stop to inquire, for it is the fact of inhabitance, and not its character, that gives jurisdiction under the act of congress. Our conclusion is that the court below had jurisdiction of this action.

At the close of the evidence the defendants requested the court to instruct the jury to return a verdict in their favor, and the next question is, should this request have been granted? The rules of law by which this evidence must be measured, and in accordance with which this question must be determined, are briefly these:

It is the duty of the trial court at the close of the evidence to direct a verdict for the party who is clearly entitled to recover, where it would be its duty to set aside a verdict in favor of his opponent if one were rendered. Railway Co. v. Davis, 53 Fed. Rep. 61, 3 C. C. A. 429; Monroe v. Insurance Co., 52 Fed. Rep. 777, 3 C. C. A. 280; North Pennsylvania R. Co. v. Commercial Bank, 123 U. S. 727, 733, 8 Sup. Ct. Rep. 266; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569; Railway Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. Rep. 905; Meehan v. Valentine, 145 U. S. 611, 618, 12 Sup. Ct. Rep. 972.

It is the duty of the master to use that degree of care commensurate with the character of his various operations which an ordinarily prudent person would exercise under like circumstances to supply his servants with reasonably safe machinery and appliances with which to perform the service assigned to them. A breach of this duty is actionable. But where the service required is performed on the surface of the earth, in open day, and its character and the appliances used in its performance are simple, the care required of the master is much less than when the machinery used is dangerous and complicated, or the work is performed in a place or at a time when its surrounding dangers are not so obvious. Railway Co. v. Jarvi, 53 Fed. Rep. 65, 68, 3 C. C. A. 433, and cases cited.

On the other hand, it is the duty of the servant to exercise that degree of care commensurate with the character of his occupation and the occasion which a reasonably prudent person would employ under like circumstances in order to protect himself from injury, and if he fails to exercise that care he cannot recover of the master for an injury to which his own negligence has contributed, even though his master has failed to exercise due care on his part. Railway Co. v. Jarvi, 53 Fed. Rep. 68, 3 C. C. A. 433, and cases cited.

A person who is of age and of ordinary capacity assumes the usual risks and dangers of the employment upon which he enters so far as they are known to him, and so far as they would have been known to a reasonably prudent person under like circumstances by the exercise of ordinary care and foresight. One of the usual risks he thus assumes is the danger from the negligence of a fellow servant who is engaged with him in a common employment in the service of the same master. Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914.

To the last rule there is this exception: If a servant who is aware of a defect in the instruments with which he is furnished notifies the master of such defect, and is induced, by the promise of the latter to remedy it, to remain in the service, he does not thereafter assume the risk from such defect until after the master has had a reasonable time to repair it, unless the defect renders the service so imminently dangerous that no prudent person would continue in it. Hough v. Railway Co., 100 U. S. 213, 225; Railroad Co. v. Young, 49 Fed. Rep. 723, 1 C. C. A. 428; Greene v. Railway Co., 31 Minn. 248, 17 N. W. Rep. 378; Railway Co. v. Watson, 114 Ind. 20, 27, 14 N. E. Rep. 721, and 15 N. E. Rep. 824.

The first question to be determined under these rules is, was there any evidence in this case that the defendant was guilty of negligence,—that he failed in the performance of his duty to provide reasonably safe appliances for the performance of the work required of the plaintiff and his fellow servant? The surface of the ground between the cars at the place where the transfer of the box was effected was smooth and hard, the floors of the cars were at the height of the shoulders of a man standing upon the ground between them, the box weighed 200 or 250 pounds, and had a good handle on each end of it. Two able-bodied men were employed to take this box from the floor of one car, carry it a space of five feet, and put it in the open door on the floor of the opposite car. It was urged that this defendant was guilty of negligence here because he did not furnish a skid for these two men to slide this box upon from one car to the other; that a man of ordinary prudence would have foreseen that this box could not be safely transferred without such a skid, and would have furnished it. Is, then, every master who employs two men to move a weight of 250 pounds a distance of 5 feet or more without planks or skids to slide it upon guilty of negligence? Yet it is to this absurd conclusion that the plaintiff's contention necessarily leads, for a safer place or more favorable conditions for this work can hardly be imagined than those presented in this case. It would require strong evidence to lead a reasonable man to such a conclusion. The record discloses no evidence that would warrant such a result, and the plaintiff himself testifies that he never thought of its being dangerous to transfer the box without the skid until after the accident. We think the jury should have been instructed that there was no evidence in this case of any breach of duty on the part of the defendant, and that for this rea-

son they must return a verdict in his favor. Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. Rep. 835; Tuttle v. Railway Co., 122 U. S. 189, 196, 7 Sup. Ct. Rep. 1166; Goodlett v. Railroad Co., 122 U. S. 391, 410, 7 Sup. Ct. Rep. 1254.

There are other considerations that lead to the same result. If there were any risks or dangers about the transfer of this train box, they were perfectly obvious to the plaintiff, and he assumed them. He, far better than any of the officers of the defendant, knew the risks attendant upon this transfer, because he had performed this work daily for three months, and they had never assisted in it, and seldom saw it done.

It is insisted by plaintiff's counsel that he can escape from this rule under the exception we have stated,—that where a servant is aware of a defect in the machinery furnished, and notifies the master of it, and he is induced, by the promise of the master to repair it, to remain in the service, he no longer assumes the danger. The reason on which this exception stands is that, where the servant may have been induced, by the promise of his master to remedy a defect, to expose himself to risks from it that he might otherwise have avoided by leaving the service, the master ought not to be permitted to deny his sole responsibility for those risks. The case before us does not fall either within the exception or its reason:

First. Because the plaintiff apprehended no risk or danger from the want of the skid, and hence could not have been induced to stay in the service, and expose himself to danger, by the promises of the defendant to furnish it. He testifies that the only reason he asked for it was because he thought it would be easier for him to slide the safe and train box over on it than to swing them across from one car to the other. He expressly says that he never before the accident thought of its being dangerous to swing them over, and that he did not regard it as at all dangerous to do so.

Second. Because no tools or appliances were necessary to transfer this box with a reasonable degree of safety; and the plaintiff was employed to do this work, and did do it, entirely by hand. A servant who is employed to perform a simple act of manual labor, the risks of which are obvious, cannot escape from his assumption of those risks by proof that the master promised to furnish him tools by the use of which his work could be done in a different way, or more conveniently, or even more safely, if it could be done with reasonable safety without the tools. Railway Co. v. Watson, 114 Ind. 20, 27, 28, 14 N. E. Rep. 721, and 15 N. E. Rep. 824; Marsh v. Chickering, 101 N. Y. 396, 400, 5 N. E. Rep. 56.

The master is not required to have his work done in the safest or most convenient way. He is not required to furnish tools for its performance if it can be performed with a reasonable degree of safety without them. The errand boy whose duty it is to climb the stairs in a high building daily cannot recover of an employer for a fall down the stairs on the ground that the latter had just promised to furnish him an elevator for his convenience or for his safety when the stairs themselves were reasonably safe.

The mason who is placing heavy stones upon a wall by hand cannot recover of his employer if he takes up one that is too heavy for him, and it falls upon his feet, on the ground that his employer had just promised to furnish him an inclined plane upon which he could roll the stones upon the wall. Nor can the plaintiff who was employed to carry this train box, without tools or machinery, from one car to the other, recover here because the defendant had promised to provide him with planks or a skid on which he could slide it across. The rule that the master is responsible for damages resulting to a servant from defects in machinery and appliances of which the servant has notified him, and which he has promised to repair, governs cases in which machinery or tools that are used in the work are discovered to be dangerously defective while in use, and to cases in which tools or machinery are necessary for the safe performance of the work. It has no application to a case where the service required is simple manual labor, without tools or machinery, and where no such tools or appliances are necessary to the performance of the work with a reasonable degree of safety. Tuttle v. Railway Co., 122 U. S. 189, 194, 7 Sup. Ct. Rep. 1166; Richards v. Rough, 53 Mich. 212, 216, 18 N. W. Rep. 785; Hayden v. Manufacturing Co., 29 Conn. 548, 558; Marsh v. Chickering, 101 N. Y. 396, 400, 401, 5 N. E. Rep. 56.

Finally, it appears from the evidence that this accident was the direct result of the negligence of the plaintiff and his fellow servant. There was a perfectly safe way to transfer this box without the skid. The two men could have placed it nearly half way out the doorway of the car, then stepped to the ground, drawn it upon their shoulders, carried it across, and placed it in the doorway of the opposite car. This was an obvious, natural, and safe way to perform this work. They chose another way. They attached (we say "they" because it appears that one of them did it, but there is some doubt which one, and that is not material) a double bell cord, about 18 inches long, to one of the handles of the box so carelessly that it became untied as they were transferring the box. The porter pushed it half way out of the car, and took hold of the rope. The plaintiff stood in the doorway of the opposite car, placed one hand on the jamb of the door, and grasped the handle of the box with the other. They then undertook to swing it across the space between the cars. The rope became untied, the plaintiff was pulled from the doorway by the weight of the box, and fell upon his head. It was obviously more dangerous for the plaintiff to attempt to carry 125 pounds in the stooping position he must have assumed, with nothing to prevent this weight or his own body from falling to the ground but his hold upon the door jamb, and to rely upon the loosely tied rope to hold the box, than it would have been to have stood firmly upon the ground beneath it, and held the box upon his shoulder as he carried it from one car to the other with the aid of the porter. Where there is a natural and safe method of performing his service, and the servant carelessly pursues a method that is obviously more dangerous, he is guilty of contributory negligence,

and cannot recover. Russell v. Tillotson, 140 Mass. 201, 4 N. E. Rep. 231.

Our conclusion is that the court below should have instructed the jury to return a verdict for the defendant:

Because there was no evidence that a reasonably prudent man in the exercise of ordinary care would have thought it necessary to furnish skids or any other tool or appliance to enable two men to move a box weighing 250 pounds with reasonable safety a distance of 5 feet from one car to another when the surface of the earth between the cars was smooth and hard, and the floors of the cars were at the height of the men's shoulders as they stood between them;

Because whatever risks there were in the transfer of the box were obvious, and better known to the plaintiff than to the officers of the defendant; and

Because the injury was the direct result of the negligence of the plaintiff and his fellow servant.

The judgment below is reversed, with costs, and the cause remanded with directions to grant a new trial.