In re CLERKSHIP OF CIRCUIT COURT IN EASTERN AND WESTERN DIVISIONS OF SOUTHERN DISTRICT OF IOWA.

(Circuit Court, S. D. Iowa. November 5, 1898.)

CLERK OF CIRCUIT COURT—SOUTHERN DISTRICT OF IOWA—POWER OF APPOINTMENT.

The act of June 4, 1880 (21 Stat. 155. c. 120), provided for the holding of the circuit court at each of the places where the district court was then held in the district of Iowa, and made the clerk of the district court also the clerk of the circuit court at all places except at Des Moines, where the circuit court for the entire district had theretofore been held and there

was a circuit court clerk. By the act of July 20, 1882 (22 Stat. 172, c. 312), the state of Iowa was divided into two districts, the Southern district being divided into the Eastern, Central, and Western divisions, the court for the Central division of which was held at Des Moines. It was further provided that the persons then acting as clerks in the district of Iowa should be the clerks for the Southern district. In 1889, congress passed an act (25 Stat. 655, c. 113), section 3 of which provided that "hereafter all appointments of clerks of circuit courts of the United States shall be made by the circuit judges of the respective circuits in which such circuit courts are or may be hereafter established; and all provisions of law inconsistent herewith are hereby repealed." *Held,* that the act of February 6, 1889, granted the power to appoint the clerks of the circuit courts to the circuit judges exclusively, and repealed all laws inconsistent with the grant or exercise of that power; and every law, whereby the right to exercise any of the powers or to discharge any of the duties of a clerk of a circuit court was made to depend upon a subsequent appointment to any office made by any other than a circuit judge, was inconsistent with the grant which that act contained, and ineffective from the date of its enactment.

This was a proceeding to determine the right of John J. Steadman, clerk of the district court of the United States in the Southern district of Iowa, to the office of clerk of the circuit court in the Eastern and Western divisions of said district.

A. B. Cummins, for E. R. Mason.

James C. Davis, for John J. Steadman.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The Southern district of Iowa is divided into three divisions for judicial purposes,—the Central, the Eastern, and the Western. In the Central division the United States circuit and district courts are held at Des Moines, in the Eastern division they are held at Keokuk, and in the Western division they are held at Council Bluffs. It is conceded that Edward R. Mason is the clerk of the circuit court for the Central division, but he and John J. Steadman each claim to be the clerk of this court for the Eastern and Western divisions of this district. They have agreed that no claim is or will be presented by either of them for fees or emoluments received or collected by the other while discharging the duties of the office prior to the filing of this opinion, so that the only question for our consideration is, who is entitled to discharge the duties and receive the emoluments of this office in the future? and we are relieved from the task of determining the rights of these claimants in the past.

Prior to June 4, 1880, the state of Iowa constituted a single judicial district, which was divided into the Northern, Central, Western, and Southern divisions, and the district court for these divisions was held at Dubuque, Des Moines, Council Bluffs, and Keokuk, respectively, but the circuit court for the entire district was held at Des Moines, and Edward R. Mason was its clerk. Rev. St. §§ 537, 572, 658. In 1880 congress passed an act which provided that the circuit court for the district of Iowa should thereafter be held at the places where the district court was held, and "that the clerk of the district court shall be the clerk of the circuit court at all the places where

the same is held in said district, except at Des Moines." Act June 4, 1880 (21 Stat. 155, c. 120) §§ 1, 2; 1 Supp. Rev. St. p. 290.    In 1882, congress divided the state of Iowa into the Northern and Southern districts; divided the Southern district into the Eastern, Central, and Western divisions; and provided that the district judge, district attorney, and marshal of the district of Iowa should be the district judge, attorney, and marshal of the Southern district of Iowa, and "that there shall be appointed by the judge of the Northern district of Iowa with the approval of the circuit judge of the Eighth judicial circuit a clerk for the district and circuit courts in and for the said Northern district of Iowa.    The persons now acting as clerks for the district of Iowa shall be the clerks for the Southern district of Iowa." Act July 20, 1882 (22 Stat. 172, c. 312) § 4; 1 Supp. Rev. St. p. 358. At the time of the passage of the act of 1880, H. K. Love was the clerk of the district court for the district of Iowa, and from that time until he died, in 1891, he acted as clerk of the circuit court for those divisions of the district of Iowa, and of the Southern district of Iowa, in which the court was held, at Council Bluffs and Keokuk, respectively, while Edward R. Mason remained the clerk of the circuit court for the division in which that court was held at Des Moines.    After the death of Love, and on February 15, 1892, the district judge of the Southern district of Iowa appointed John J. Steadman clerk of the district court for that district.    Under this appointment, he entered upon the discharge of the duties of the clerk of the circuit court for the Eastern and Western divisions of the district, and has continued in their discharge to the present time.    He maintains that under the acts of 1880 and 1882 he is entitled to discharge these duties and to receive the emoluments of this office, in the future as he has in the past.

In 1889 congress passed an act by which it established circuit courts for the Western district of Arkansas, the Northern district of Mississippi, and the Western district of South Carolina, and repealed the laws which had conferred circuit court powers upon the district courts of these districts, and upon the district courts of West Virginia, and of the Eastern district of Arkansas, at Helena.    25 Stat. 655, 656, c. 113, §§ 1, 5; 1 Supp. Rev. St. p. 638.    Section 3 of this act provided that the circuit judge of the circuit in which each of the circuit courts thereby established was situated should appoint a clerk of such circuit court, and closed with these words:   "Hereafter all appointments of clerks of circuit courts of the United States shall be made by the circuit judges of the respective circuits in which such circuit courts are or may be hereafter established; and all provisions of law inconsistent herewith are hereby repealed."    One of the claims of Mason is that the acts of 1880 and 1882, conferring the powers of the clerk of the circuit court upon the clerk of the district court, are inconsistent with the power of appointment of the clerk of the circuit court vested in the circuit judges by this act of 1889, and that, since Steadman has never received any appointment from the circuit judges, the office of clerk of the circuit court in the Eastern and Western divisions of this district is either vacant, or he (Mason) is the incumbent under his appointment as clerk of the circuit court of the orginal

district of Iowa. On the other hand, counsel for Steadman insist that the acts of 1880 and 1882 are special laws; that they give no power of appointment of the clerk of the circuit court to the district judge; that their only effect is to add the duties of the clerk of the circuit court to those of the clerk of the district court in these two divisions of the district; that there is nothing in this inconsistent with the grant of the power of appointment of the clerk of the circuit court to the circuit judges by the general law of February 6, 1889, and that, under the familiar rules of construction that repeals by implication are not favored, that two acts upon the same subject must stand together if possible, and that privileges granted by special act are not affected by inconsistent general legislation, but the special act and the general laws must stand together, the one as the law of the particular case and the other as the general law of the land (Henderson's Tobacco, 11 Wall. 653, 657; Gowen v. Harley, 6 C. C. A. 190, 196, 56 Fed. 973, 979, and 12 U. S. App. 574, 584), the acts of 1880 and 1882 are still in force, and the clerk of the district court is rightfully exercising the powers of the clerk of the circuit court thereunder. The question in this case, however, is not whether the act of 1889 repeals the acts of 1880 and 1882, or any part of either of them, by implication, but whether or not it does so by its express terms.

The concession may be made that general legislation inconsistent with existing special laws does not ordinarily repeal or affect them. It is none the less true that by express reference to them it may do so. The act of 1889 expressly repeals all provisions of law inconsistent with its declaration that after its passage all appointments of clerks of the circuit courts shall be made by the circuit judges. Is not a provision of law which confers the powers and emoluments of the clerk of the circuit court in the major part of a district, upon an appointee of another, inconsistent with the unlimited power of appointment of the clerks of the circuit courts granted to the circuit judges by the act of 1889? This is the crucial question in this case, and in considering it, and determining the scope and effect of the act of 1889, we must not lose sight of the fact that the sole object to be sought in the interpretation of a law is the intention of the legislative body which enacted it, and that rules of construction are only serviceable as they assist us to attain that object. Kohlsaat v. Murphy, 96 U. S. 153, 160. It is always difficult, and often impossible, to correctly construe a statute without a full knowledge of the existing legislation upon its subject when it was enacted, and of the evil it was passed to prevent or remove. Without this knowledge, the subjects considered, and the purposes present in the minds of the legislators, may be unperceived, and the intent with which they acted may be mistaken. No rule of construction, no course of proceeding, is more helpful to a court, in rightfully interpreting a law, than to put itself in the place of the legislative body which passed it, at the time of its enactment, with a complete knowledge of the legislation on its subject at that time, and then to seek, in the light of that legislation, the purpose for which it was passed and the evil it was intended to remedy. If, when this is done, its terms fairly express that purpose, and are suited to its accomplishment, its construc-

tion is no longer doubtful. The history of the legislation on the subjects of the act of 1889, before its passage, and the condition of the laws on these subjects at the time of its enactment, will be found of material assistance in determining its meaning and its purpose.

The act treats of two subjects,—the circuit-court powers of district courts, and the appointment of the clerks of the circuit courts. Prior to 1889, it had been a common practice of congress to confer upon district courts some of the powers of the circuit courts in their respective districts. Prior to 1837 such powers had been conferred by various acts upon the district courts of Indiana, Illinois, Missouri, Arkansas, the Eastern district of Louisiana, the district of Mississippi, the Northern district of New York, the Western district of Virginia, the Western district of Pennsylvania, and the districts of Alabama. By the act of March 3, 1837, these powers were revoked. 5 Stat. 177, c. 34, § 3. In 1838 circuit-court powers were again granted to the district court of the Western district of Virginia (5 Stat. 215, c. 46, § 1); in 1839 such powers were conferred upon the district court of the Northern district of Mississippi (5 Stat. 317, c. 27, § 1); in 1851 upon the district court for the Western district of Arkansas (9 Stat. 595, c. 24, § 3); and in 1856 upon the district court of South Carolina which sat at Greenville (11 Stat. 43, c. 119, § 3). In 1848 circuit-court powers were conferred upon the district court of the Northern district of Georgia (9 Stat. 281, c. 51, § 8), but they were revoked by an act of June 4, 1872 (17 Stat. 218, c. 284, § 1). The provisions of the acts giving circuit-court powers to district courts which had not then been repealed were embodied in section 571 of the Revised Statutes. On January 31, 1877, this section was so amended as to provide that the district courts of the Western district of Arkansas, the Eastern district of Arkansas at Helena, the Northern district of Mississippi, the Western district of South Carolina, and the district of West Virginia (formerly the district court of the Western district of Virginia), should have and exercise certain circuit-court powers. 19 Stat. 230, c. 41; Rev. St. § 571. The courts mentioned in this amendment of 1877 were the only district courts of the states which had or exercised circuit-court powers when the act of February 6, 1889, was passed. That act abolished these powers, and expressly repealed all the laws then in force which had conferred them, so that, from the time of its approval, there was no district court in any state in the Union which could exercise the powers of a circuit court. Act Feb. 6, 1889 (25 Stat. 655, 656, c. 113) §§ 1, 5; 1 Supp. Rev. St. p. 638. A diligent examination of the subsequent acts of congress has disclosed no act in which such powers have since been granted to a district court. It is therefore plain that one of the purposes of congress in the passage of the act of 1889 was to draw the same line of demarkation between the jurisdiction and powers of the circuit and district courts in every state in the Union, so that the practice might be uniform throughout the Nation, and that the jurisdiction and powers of these courts should be distinct and separate, wherever they exist. It must be conceded that this act of 1889 completely accomplished this purpose.

We turn to the consideration of the other subject treated in this

statute,—the appointment of the clerks of the circuit courts.  By the judiciary act of 1789 the clerks of the district courts were made ex officio clerks of the circuit courts in their respective districts.  1 Stat. 76, c. 20, § 7.  In 1839 congress provided "that all the circuit courts of the United States shall have the appointment of their own clerks; and in case of a disagreement between the judges, the appointment shall be made by the presiding judge of the court."    5 Stat. 322, c. 36. § 2.    In "An act to amend the judicial system of the United States," approved on April 10, 1869, this section appears:

"Sec. 3. Be it further enacted that nothing in this act shall affect the powers of the justices of the supreme court as judges of the circuit court, except in the appointment of clerks of the circuit courts, who in each circuit shall be appointed by the circuit judge of that circuit and the clerks of the district courts shall be appointed by the judges thereof respectively:  provided, that the present clerks of said courts shall continue in office till other appointments be made in their place, or they be otherwise removed."  16 Stat. 45, c. 22, § 3.

Congress subsequently provided, by special acts, that the circuit and district judges of the district of Wisconsin should appoint two clerks, one of whom should reside and keep his office at Madison, and the other at La Crosse, each of whom should be the clerk of both the circuit and district courts (Act June 30, 1870 [16 Stat. 172, c. 175] § 9); that the circuit and district judges of the Western district of Virginia should appoint four clerks, who should reside and keep their offices, respectively, at the four places of holding these courts in that district, each of whom should be the clerk of the circuit and district courts (Act Feb. 3, 1871 [16 Stat. 404, c. 35] § 9); and that the circuit and district judges of the district of North Carolina should appoint three clerks, who should reside and keep their offices at Statesville, Asheville, and Greensboro, respectively, each of whom should be the clerk of both the circuit and district courts (Act June 4, 1872 [17 Stat. 217, c. 282] § 9).    These provisions of the acts of congress were carried forward and embodied in sections 619, 621, 622, and 623 of the Revised Statutes.    In 1878, section 619 was amended, by a clause inserted in the act making appropriations for the executive, legislative, and judicial expenses of the government, so that it read:

"All the circuit courts of the United States shall have the appointment of their own clerks, the circuit and district judges concurring; and in case of a disagreement between the judges the appointment shall be made by the associate justice of the supreme court allotted to such circuit, except in cases otherwise specially provided for by law."  20 Stat. 204, c. 329.

In 1880 and 1882 the acts respecting the appointment of the clerks of the circuit courts in the districts of Iowa, which we have quoted in the earlier part of this opinion, followed, and then came the act of 1889.

We have now briefly reviewed the history of the legislation upon the subject under consideration, and stated the effect of every statute upon this subject which was in effect when the act of 1889 was passed. Conceding that the effect of the acts of 1880 and 1882 was to confer upon any person who had been, or thereafter might be, appointed clerk of the district court for the Southern district of Iowa, the powers and emoluments of the clerk of the circuit court in the East-

ern and Western divisions of that district, as the counsel for Stead-
man claims, this was the legislative situation: Congress had pro-
vided by a general law, in 1839, that the circuit courts should appoint
their own clerks.   In 1869 it had provided, by another general law,
that each circuit judge should appoint the clerks of the circuit courts
in his circuit.   Subsequently, by special acts, the clerks of the dis-
trict courts were made the clerks of the circuit courts in the Eastern
and Western divisions of the Southern district of Iowa, in the North-
ern district of Iowa, in the district of Wisconsin, in the Western dis-
trict of Virginia, and in the district of North Carolina; and the
power of appointment of the clerks of the circuit courts was conferred
upon the district judge alone in the Eastern and Western divisions
of the Southern district of Iowa, while in the Northern district of
Iowa, in the district of Wisconsin, in the Western district of Vir-
ginia, and in the district of North Carolina, by virtue of special laws.
and in all the other districts, by the general law of 1878, it was vested
in the circuit and district judges acting together.   In other words,
the district judge was authorized to name the person who should
discharge the duties and receive the emoluments of the clerk of the
circuit court in the Eastern and Western divisions of the Southern
district of Iowa without the consent or concurrence of the circuit
judges, while the circuit judges had no power to appoint a clerk of
any circuit court in any district in the Nation without the concurrence
of the district judge of that district.   Then came the act of 1889,
with its declaration that "hereafter all appointments of clerks of
circuit courts of the United States shall be made by the circuit
judges;   *   *   *   and all provisions of law inconsistent herewith are
hereby repealed."

We are now prepared to consider the question at issue in this case:
Was not the provision that a district judge might appoint a clerk
of the district court, who should discharge the duties and receive
the emoluments of the office of the clerk of the circuit court in the
Eastern and Western divisions of this district, inconsistent with the
grant to the circuit judges of the unlimited power of appointment of
that clerk made by the act of 1889?   The somewhat careful and
extended consideration that has been given to this act, its scope, and
probable purpose, in the light of the previous legislation on its sub-
jects, to which reference has been made, seems to lead almost inev-
itably to the conclusion that this question should be answered in the
affirmative.   The argument that the acts of 1880 and 1882 are not
inconsistent with the grant of the power of appointment made by the
act of 1889, because they do not authorize the appointment of a clerk
of the circuit court by a district judge, but simply add, to the duties
and emoluments of the clerk of the district court, those of the clerk
of the circuit court for these two divisions of the district, proves
too much.   If it were sound, an act which conferred all the powers
and emoluments of the clerk of the circuit court in a given district
upon the clerk of the district court, or one that bestowed all the
powers and emoluments of all the clerks of the circuit courts upon the
respective clerks of the district courts, would not be repugnant to
that grant, and, under such a construction, it might become "as idle

as a painted ship upon a painted ocean." That was not the intention of congress when it enacted this law. When it passed the act of 1878, it saved from repeal the special acts regarding the appointments of the clerks of the circuit courts which were then in force by the express provision that the power of appointment there given should take effect, "except as otherwise specially provided for by law"; but, when it passed the act of 1889, it clearly indicated its intention to strike down all other methods of appointment, and to vest the power in the circuit judges exclusively, by the sweeping declaration that all appointments should thereafter be made by them, and by the express provision that all laws inconsistent with that declaration should be repealed. When this act is read in the light of the legislation on this subject in force when it was passed, and in the light of this express provision for the repeal of inconsistent laws, the intention of congress to revoke the authority of the district judges to appoint or to participate in the appointment of the clerks of the circuit courts, and to vest that power of appointment uniformly and exclusively in the circuit judges, shines as clearly through it as does its purpose to revoke the circuit powers of the district courts, and to vest them uniformly in the circuit courts. The act of February 6, 1889, granted the power to appoint the clerks of the circuit courts to the circuit judges exclusively, and repealed all laws inconsistent with the grant or exercise of that power. Every law, whereby the right to exercise any of the powers or to discharge any of the duties of a clerk of a circuit court was made to depend upon a subsequent appointment to any office made by any other than a circuit judge, was inconsistent with the grant which that act contained, and ineffective from the date of its enactment. The appointment of Steadman, in 1892, as clerk of the district court, by the judge of that court, gave him no lawful authority to exercise the powers, or to receive the emoluments, of the clerk of the circuit court in any of the divisions of the Southern district of Iowa. He has not been and is not the clerk of the circuit court de jure in these divisions, but he has been and is so de facto, and his acts as such are as valid and conclusive, upon all who have not called his title to the office in question by quo warranto or other like direct proceeding, as though he had rightfully held his office.

The next question which would naturally arise here is whether or not Mason has been entitled to the emoluments of this office while Steadman has been its apparent incumbent; but the agreement of the parties, that neither claims restitution from the other, makes this an academic question, and we have not considered it. The only practical question is, who shall exercise the powers of this office in the future? Since the power of appointment rests in us, we shall solve this question by exercising it. Steadman may continue to act as clerk of the circuit court de facto for the Eastern and Western divisions of the district until January 1, 1899, and Mason will be appointed clerk of the circuit court for the entire district, expressly including the Eastern and Western divisions thereof, and his appointment will take effect on January 1, 1899.