## TOWN OF ALDEN v. EASTON.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1901.)

### No. 1,573.

1. TOWNS—BONDS TO AID RAILROAD—AMOUNT—LIMIT—STATUTES—CONSTRUC-
TION.

Gen. St. Minn. 1866, c. 10, § 107, provided that no town should have power to contract debts in any one year in a larger sum than the amount of taxes assessed for such year, unless authorized by a majority of its voters. Chapter 11, § 78, as amended, limited the annual tax levy for town purposes to a sum not exceeding 10 mills on the dollar, and provided that nothing in such section should be construed to prevent the supervisors of any town from "levying any tax which by any special law they are authorized to levy." Section 79 prohibited the contracting of any debt by a town which would render necessary the levy of a higher rate of tax than that prescribed by section 78, "unless specially and expressly authorized by law." An act of the legislature (Sp. Laws Minn. 1868, p. 47), in section 1, expressly authorized each town in certain counties to issue bonds, as thereinafter provided, to aid in the construction of any railroad running into such counties. Section 2 prescribed the minimum face value of the bonds, manner of execution, and rate of interest. Section 3 provided that any such town might, by vote of the majority of the legal voters of such town, fix the amount and size of bonds to be issued and the rate of interest. Section 4 provided a complete scheme for levying a tax on the property of the town in an amount "not less than the principal and interest upon such bonds," for the apportionment of the tax, collection thereof, and payment of the bonds. *Held* that, as the act of 1868 undertook to provide a complete scheme to accomplish the desired purpose, in the absence of a plain and clear intent it should not be presumed that it meant that the authority given the town to fix the amount and size of the bonds should be read with, and limited by, Gen. St. 1866, c. 11, §§ 78, 79, to 10 mills on the dollar of the taxable property.

2. SAME.

The act of 1868 is obviously the exercise of the power reserved by the legislature in Gen. St. Minn. 1866, c. 11, §§ 78, 79, to permit by special law, in exceptional cases, the creation of debts by towns in excess of the limit prescribed by the general law.

3. SAME—AUTHORITY TO FIX AMOUNT—LEGAL VOTERS.

By the act of 1868, the whole matter of whether bonds should be issued, and the amount thereof, was relegated to the judgment of the legal voters of the town, who by self-imposed taxation were required to make provision for the payment, and the bonds issued pursuant to such authority are valid.

In Error to the Circuit Court of the United States for the District of Minnesota.

The town of Alden, the plaintiff·in error, one of the congressional townships of Freeborn county, in the state of Minnesota, on March 28, 1870, having been duly authorized by a majority of its qualified voters, issued its 15 certain bonds, of the denomination of $1,000 each, in aid of the construction of the Southern Minnesota Railroad, projected across the township. These bonds were payable, according to their tenor, on or before 30 years after date, and bore interest, represented by attached coupons, at the rate of 7 per cent. per annum. The railroad was constructed as projected, and the bonds received by the company were negotiated and passed from hand to hand in the market from the date of their issue until 1894, when 10 of them were purchased by Easton, the defendant in error, under such circumstances as constituted him, within the meaning of the law, an innocent purchaser thereof for value. The coupons representing the interest on the

bonds were regularly paid from 1870 to 1898 without any question or objection on the part of the town as to their validity. On July 24, 1899, the town, by its treasurer, wrote a letter to Easton notifying him that it had determined to contest the validity of the bonds. After the principal had matured, Easton instituted this suit in the circuit court of the United States for the district of Minnesota against the town to recover the face value of the bonds, together with interest accrued thereon from and after 1898. The town in its answer denied liability, on the ground that it exceeded the limit of indebtedness permitted by the statutes of Minnesota in issuing the bonds, and that they were therefore void. It also filed a counterclaim to recover from Easton the amount of interest paid him by the town after he had become the owner of the bonds. The case went to trial, and resulted in a judgment for Easton for the full amount of the principal of the bonds and unpaid interest thereon. The town brings the case here by writ of error to reverse that judgment.

Charles Butts (A. C. Wedge and Moses E. Clapp, with him on the brief), for plaintiff in error.

S. D. Catherwood (R. E. Shepherd, with him on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The General Statutes of Minnesota of 1866, in force in 1870, when these bonds were issued, provide as follows:

Chapter 10, § 107:

"No town has power to contract debts or make expenditures for any one year in a larger sum than the amount of taxes assessed for such year, without having been authorized by a majority of the voters of such township. * * *"

Chapter 11, § 78:

"There shall be levied, annually on each dollar of taxable property in this state (other than such as by law is otherwise taxed) as valued and entered on the grand list of taxable property for the several purposes in this chapter enumerated, taxes at the rates hereinafter specified, namely: * * * For township purposes on the taxable property in the township, as entered and valued on the grand list, such sum as the clerk shall certify to the county auditor, has been voted by such town not exceeding five mills on the dollar. * * *"

By subsequent amendment, the limit of the levy of 5 mills on the dollar was enlarged to 10 mills on the dollar. By act of the legislature of Minnesota approved March 6, 1868 (Sp. Laws Minn. 1868, p. 47), power was conferred upon the towns in several counties of the state, including Freeborn county, to issue bonds in aid of the construction of any railroad running into, or proposed to be built through, either or all of such counties. Section 3 of that act is as follows:

"Any town in either of the aforesaid counties may at any annual or regularly called special meeting, by vote of the majority of the legal voters of such town present and voting, fix the amount and size of bonds to be issued by such town, the rate of interest and the date of payment of all and any thereof. * * *"

Section 4 of that act provides a scheme for levying a tax upon the real and personal property of the town, and for the collection

thereof, and for the appropriation of the same, when collected, to the payment of the principal and interest of the bonds issued by the town. An act of the legislature of Minnesota approved February 27, 1869, amends the act of March 6, 1868, in certain particulars unnecessary now to be referred to.

It is contended by plaintiff in error that the provisions of Gen. St. 1866, c. 11, § 78, are applicable to and control the present case, and that the limit of indebtedness there fixed, namely, such as shall not exceed 10 mills on the dollar of taxable property of the town, exhausted the power of the town. It is admitted that $15,000, the aggregate of the bonds issued, exceed that limit. It is contended, on the other hand, by the defendant in error, that the provisions of the General Statutes already quoted are not applicable to the creation of the bonded indebtedness in question, but that the Special Acts of 1868 and 1869 conferred ample authority upon any town to incur an indebtedness in aid of the construction of railroads through the county, in any amount which might be agreed upon by a majority of the qualified voters of the town. The trial court adopted the latter view, and ruled accordingly. The correctness of this ruling only is brought to our attention by the assignment of errors.

The general statutes relating to township organization (section 107, c. 10, Gen. St. 1866) place no limit upon the power of towns to create debts, the only condition thereto being an authorization by a majority of the voters of the town; but chapter 11, § 78, relating to the levy of taxes, fixes a limit of taxation for township purposes not exceeding 10 mills on the dollar of the taxable property of the township, but contains a very significant proviso, as follows:

"And provided further that nothing in this section shall be construed to prevent the county commissioners, township supervisors, or corporate authorities of any city, town or village from levying any tax which by any special law they are authorized to levy."

Section 79 of the same chapter contains a prohibition against contracting any debt or incurring any pecuniary liability by a town which will render necessary the levy of a higher rate of tax than the maximum rate prescribed by section 78, namely, 10 mills on the dollar of the taxable property of the town, but this last-mentioned prohibition contains a very significant exception. It reads as follows:

"It shall be unlawful for the corporate authorities of any * * * township, * * * unless specially and expressly authorized by law, to contract any debt * * * for the payment of either principal or interest of which * * * it will be necessary to levy * * * a higher rate of tax than the maximum rate prescribed by this chapter."

From the foregoing provisions of the general laws relating to township organization and taxes, it is, we think, very obvious that the legislature of Minnesota first adopted a general rule prohibiting the creation of any debt by a town in excess of 10 mills on the dollar of the valuation of its taxable property, and at the same time made provision for exceptional cases when it could, by the passage of a special law, permit a town to create an indebtedness in excess of

that limit, provided only it secured the consent of a majority of the voters of the town thereto. In other words, the legislature seems to have thought that its own legislative wisdom and discretion and the will of the majority of the voters of the town, taken together, would afford adequate safeguards against improvidence when any special occasion should arise suggesting the advisability of contracting indebtedness in excess of the limit fixed by the general law.

We are now brought to the inquiry whether the legislature enacted any special law authorizing the plaintiff in error to contract the indebtedness in question. Attention has already been called to the act approved March 6, 1868. Section 1 of that act expressly authorizes each town in the counties of Filmore, Mower, Freeborn, Faribault, Martin, and Jackson "to issue bonds *as hereinafter provided*, to aid in the construction of any railroad running into or proposed to be built through either or all of the counties aforesaid." No limit is there placed upon the amount of bonds to be issued except such as is comprehended in the words underscored, "as hereinafter provided." Section 2 prescribes the minimum face value of the bonds, the rate of interest they shall bear, and how they shall be executed. Section 3 is as follows: "Any town in either of the aforesaid counties may at any annual or regularly called special meeting by vote of the majority of the legal voters of such town, present and voting, fix the amount and size of bonds to be issued by such town, the rate of interest," etc. Section 4 provides a complete scheme for levying a tax upon the real and personal property of the town in an amount "not less than the principal and interest upon such bonds," and to "apportion the same upon such years as may be deemed expedient," and also for the collection and payment of such tax to the town treasurer, to be by him applied "in payment of the principal and interest of the bonds issued by the town." It thus appears that this act is complete in itself, and requires no resort to the general law for its enforcement. It authorizes the issuing of bonds, and provides a full scheme of taxation to secure funds for their payment.

But it is contended by the plaintiff in error that the words found in section 3, authorizing the majority of the legal voters to "fix the amount and size of bonds," must be read in connection with the general law, and be supplemented by the words found in that law, namely, "not exceeding ten mills on the dollar on the taxable property of the township." We are unable to agree with this contention of counsel, for the following reasons: First, the legislature, as already observed, undertook to provide a complete scheme to accomplish the desired purpose, and we should not presume, in the absence of a plain and clear intent to the contrary, that it meant what it did not say; second, the act in question is obviously the exercise of a power reserved to the legislature by the general law (sections 78, 79, c. 11, Gen. St. 1866) to permit, by special law, in exceptional cases, the creation of debts by towns in excess of the limit prescribed by the general law; third, the act of 1868, by clear and unmistakable language, authorizes each town in Freeborn county, among others, to issue bonds "as hereinafter provided,"

and then provides for an election, conferring upon the majority of the legal voters of the town power to "fix the amount of bonds * * * to be issued." In other words, the legislature, being satisfied that the best interests of the towns justified them in extending aid to railroad construction in their counties, left it to the judgment of the majority of the legal voters to determine whether the towns should grant any aid, and, if so, to fix the amount of such aid. The whole matter relative to the amount of bonds to be issued was relegated to the judgment of the legal voters of the town, who, by self-imposed taxation, were required to make provision for the payment of the same.

The foregoing conclusions are in harmony with the views expressed by the supreme court of Minnesota in the case of State v. Town of Clark, 23 Minn. 422. The town of Clark was one of the towns in Faribault county which issued bonds in aid of a railroad, under the provisions of the act of March 6, 1868. In 1872 the constitution of Minnesota was amended so as to create an effectual inhibition against contracting any indebtedness by towns in excess of 10 per cent. of the value of their taxable property. It was contended by the town that the constitutional amendment abrogated the act of 1868, so that no authority to issue bonds thereunder existed after the adoption of the constitutional amendment. The court in its opinion takes occasion to say:

"By Sp. Laws 1868, c. 24, as amended by Sp. Laws 1869, c. 44, and Sp. Laws 1870, c. 49, any town in the county of Faribault was authorized to issue bonds to aid in the construction of any railroad running into such county. No limit was placed upon the amount of bonds which might be issued by any town upon the determination of its voters. * * * Prior to the taking effect of this [constitutional] amendment, the power of the legislature to authorize the issuing of bonds or the incurring of indebtedness [in aid of railroads] by any of the municipal corporations mentioned was unlimited as respected the amount of bonds and indebtedness. * * * At the time when the amendment was made [in 1872], the laws under which the town of Clark was authorized to issue the bonds in question had been enacted and were in full force. They placed no limit upon the amount of bonds issuable, save such as might be fixed by the voters."

While it may be said that the real question now under consideration was not necessarily involved in that case, and therefore that the opinion expressed by the supreme court is not such an interpretation of local law as, under recognized principles, should control our judgment, it is nevertheless true that the supreme court in that case had the general subject before it, and expressed views in harmony with reason, and which commend themselves to our judgment.

In the case of State v. Routh, 61 Minn. 205, 206, 63 N. W. 621, 622, the supreme court had under consideration the rule governing the construction of statutes of Minnesota, and announced its conclusion as follows:

"When a general intention is expressed, and also a particular one which is inconsistent with the general one, the particular intention will be considered an exception to the general one; that is, where a special law which applies to a limited district, as a city, conflicts with a previous general law, the latter yields to the former."

In the case of Board of Com'rs of Seward Co., Kan., v. Ætna Life Ins. Co., 32 C. C. A. 585, 590, 90 Fed. 222, 227, the rule was laid down by this court thus:

"Privileges granted by special act are not affected by inconsistent general legislation on the same subject. but the special act and the general laws must stand together, the one as the law of the particular case, and the other as the general law of the land."

To the same effect also are the following authorities: Townsend v. Little, 109 U. S. 504, 512, 3 Sup. Ct. 357, 27 L. Ed. 1012; Gowen v. Harley, 6 C. C. A. 190, 56 Fed. 973; Felt v. Felt, 19 Wis. 193, 196; Ex parte Smith, 40 Cal. 419; Crane v. Reeder, 22 Mich. 322; Suth. St. Const. §§ 158, 159.

For the reasons hereinbefore stated, and on the authorities cited, we entertain no doubt that the trial court correctly ruled that the special act of 1868 conferred ample authority upon the town of Alden to incur the indebtedness represented by the bonds in question.

Our attention was called in the argument to several acts of the legislature of Minnesota passed in 1871, 1875, 1881, and 1883, recognizing the validity of the bonds in question, and also to the fact that the town of Alden had levied taxes to pay the interest on the bonds from year to year, beginning with 1871 and ending with 1897, and had actually paid the same without objection, and without any claim that the bonds were invalid; and it was argued with much force and persuasiveness that the acts of the legislature in question constitute a legislative recognition of the validity of the bonds, and that the acts of the town in levying taxes and paying the interest on the bonds for a period of nearly 30 years evince a construction of the statutes by the parties in interest in harmony with the contention of the defendant in error, and that these acts of the state and of the parties should be given force in the determination of the question now involved.

It is certainly true that, in cases of doubt concerning the true interpretation to be placed upon legislative enactments, resort may be had to contemporaneous, and even subsequent, legislation, to ascertain the true intent and meaning of that in question; and it has been held by this court in the cases of County of Washington v. Williams and Blair v. County of Washington (decided at its last May term; C. C. A.) 111 Fed. 801, that, even in cases involving the power of a municipality to aid in the construction of a railroad, a liberal interpretation should be placed upon the act claimed to confer the power when first brought in question after the lapse of many years of continuous recognition of the validity of the bonds issued thereunder. But, in the view we have taken of the legislation involved in this case, we find no occasion to resort to these extraneous aids. The act of March 6, 1868, for the reasons hereinbefore stated, conferred adequate power upon the town of Alden to issue the series of bonds in question.

Some other questions were discussed by counsel at the argument and in their briefs, but, as they are not based upon any assignment of error, they require no consideration at our hands.

The judgment of the circuit court is affirmed.