# APRIL TERM 1884.

GEORGE B. RICHARDS v. WILLIAM R. ROUGH ET AL.

*Master and Servant—Risks of the employment.*

1. Accidental injuries to a servant will not sustain an action against the master where they arise from the servant's voluntary use of machinery which he understands and to which no objection has been made as being peculiarly unsafe.

2. Employers may use such machinery as they choose, provided it is sound, well-made and kept in repair; and in an action for injuries caused by its use the question whether a different kind of machinery would not have been safer cannot be considered.

3. A master is bound only to use ordinary care in protecting his servants from dangers that are not within their knowledge or observation: the servant is supposed to understand and assume the ordinary risks of his service.

4. Masters do not impliedly warrant the machinery and appliances used by their servants to be safe beyond any contingencies, or even to be as safe as those of other employers.

5. A servant who continues without objection to use machinery which he has found to be unsafe, assumes the risk and cannot recover for injuries which he may receive in consequence of doing so.

Error to Berrien. (A. J. Smith, J.) Jan. 9.—April 9.

CASE. Defendants bring error. Reversed.

*Van Riper & Worthington* and *Edward Bacon* for appellants. Employees assume the ordinary risks of their employment: *Quincy Mining Co. v. Kitts* 42 Mich. 41; if the evidence in an action for negligent injury has no tendency to show that defendants were neglecting to use ordinary diligence at the time of the accident, the case should be taken from the jury: *Day v. Toledo C. S. & Detroit Ry.*

42 Mich. 525; *McGinnis v. Canada Southern Bridge Co.*
49 Mich. 469; *Davis v. D. & M. R. R.* 20 Mich. 125-126;
*Fort Wayne, Jackson & Saginaw R. R. Co. v. Gildersleeve*
33 Mich. 135; *Samuelson v. Cleveland Iron Mining Co.* 49
Mich. 171.

*Alison C. Roe* and *George S. Clapp* for appellee. An
employee cannot be guilty of contributory negligence if he
has no knowledge of the risk he runs: Cooley on Torts
661; *Swoboda v. Ward* 40 Mich. 424; and the burden of
showing that he knows it is on his employer in an action
against the latter for injury: *Lake Superior Iron Co. v.
Erickson* 39 Mich. 500.

SHERWOOD, J. The plaintiff brings his action on the case for
injuries received while in the employ of defendants, using
machinery which he alleges was unsafe. The defendants are
partners, and for many years have been largely engaged
in carrying on the business of manufacturing wagons at
Buchanan, in this State. They are not mechanics. Their
business in the shops, at the time the accident complained of
occurred, was under the general management of M. S. Mead,
against whose competency for the position nothing appears in
this record. He had the general superintendence of the entire
business at the works, and George McNeil had the oversight
and immediate charge of the blacksmith shops in which the
injury to plaintiff occurred, and nothing is alleged against his
competency and fitness for his position. Various machines
for sundry and divers purposes, all connected with the plaint-
iff's business, however, were run and operated in this shop,
and quite a large number of men were employed therein for
that purpose. The motive power used for propelling
the machinery was steam, and there is no complaint but that
this was properly managed. For fourteen months before the
accident occurred the plaintiff, who was then twenty-three
years of age, had been working in the blacksmith shop for
the defendants, cutting iron and punching holes in iron plates
with the punching-machine, known as the Long & Alstater
power press, and by which he claims to have been injured.
The machine had been in use in the shop as long as the

plaintiff had been there, and was in general use in such business establishments long before plaintiff used it, and he used it for two hours immediately preceding the accident, and when in the shop used it a quarter of the whole time he was employed. The die and punch were both new. The punch had been set twice. Mr. McNeil set it both times, and the plaintiff was present.

In describing the accident, the plaintiff says: "I always sat right in front of the machine. I only have a recollection I was punching these plates, and placed one on the gauge out here, (describing the model before him,) sitting in front of the machine, and swung it in, and heard the crash; * * * that is all I know about it. I cannot describe the crash even. * * * I know I did not become unconscious. * * * I don't know whether I went over or not. I think I threw my head back. I don't hardly think it threw me from my feet." One piece of steel went into his eye, another into his cheek, and another into his forehead. The plaintiff further testified that he had no thought of danger at all, in connection with punching the piece of iron, when the injury occurred. Plaintiff further stated he could use the machine and punch as well as Mr. McNeil could; that he understood how to use the machine, and noticed nothing wrong in the way the die was set; noticed the working of the punch; saw nothing wrong with it; never knew there was any defect about the machine or its working; never had any accident with the machine before; never saw any indication of an accident; and that the die was always held firm, so far as he could discover.

None of the witnesses testify that the machinery used was more dangerous or unsafe than others of that kind, and the only ground upon which the plaintiff seeks to recover is that the defendants were negligent in using Long & Alstater's set-screw method in fastening and holding the die; that to use it was negligence. The cause was tried by jury, and under the rulings and charge of the circuit court the plaintiff obtained a verdict for $4383.33. Defendants appeal.

It is unnecessary, under the previous rulings of this Court, to discuss this case at length, or to examine separately each

of the 61 assignments of error. But three questions of im-portance are necessarily involved. (1) Was the plaintiff injured by the machine of the defendant? (2) Was the defendant negligent in furnishing the plaintiff with proper and reasonably safe machinery to use? (3) If they were, was this fact known to plaintiff, and, if it was, did he continue to use the same without protest or objection?

It may be said the verdict has settled the first question in favor of plaintiff, and this is true if it was based upon testimony properly admitted under a charge properly given by the circuit judge. We shall not, however, enter upon an examination of the record upon this point in our discussion of the case, but leave it as the jury has found it.

Upon the second point, it is not claimed that the machinery was not good, sound, and well made; neither does it appear from the record that the plaintiff ever made any objection to its use, or notified defendants that it was in any respect improper or dangerous for the purposes for which it was used, or anything of the kind. He was in the employ of a company, none of whose members were accustomed to machinery. If the machinery or any of the appendages were dangerous, or one position was more dangerous than another, the plaintiff's means of knowing that fact were far greater than defendants'. He gave no notice of anything of the kind; in fact, it seems never to have occurred to him that there was any danger.

It is difficult to see how the defendants can be held responsible to a skilled employee for an injury received while using machinery with which he was particularly acquainted, and which neither he nor any other person ever regarded as unsafe. The testimony does not show or tend to show that the machinery, from the use of which the injury occurred, was defective, either in construction or for want of repair; neither does it appear that anything could have been done to the machine by the defendants to guard against danger or accidents more than was done. All machinery is dangerous to a greater or less extent, and particularly when operated by steam. The defendants had to select the kind of machinery they

wished in conducting their business. At this day, when inventions of machinery are of daily occurrence, frequently a large number of different kinds are made to accomplish the same purpose, and great difference of opinion exists as to the kind best adapted to the use intended in the minds of men well skilled in their construction and use. The comparative merits of the different kinds, whether as to safety or utility, are questions most difficult to solve ; and to say that it shall be left to a court or jury to determine in any given case which kind a manufacturer shall use in order to avoid liability in case of an accident to an employee while using it, would be imposing a duty upon the court and an injustice upon the party alike intolerable. A manufacturer must be permitted to choose the machinery he desires to use, and to control his business in his own way, provided he does no unlawful act. He may use new or old machinery, according to his liking, and if it is sound, well made, and kept in repair, he will not be liable for an accident occurring to an employee using it, so long as the only cause alleged is that there is a better and safer kind of machinery used for the same purpose.

There is no question in this case but that the injured party had as much knowledge of the machine and appliances used, and of all the circumstances relating to the machinery and its safety, as did the defendants or their foreman. There is no showing in this case that defendants or their foreman did not use ordinary care and prudence in protecting the plaintiff against dangers not within his knowledge or observation, and the accident of which he complains, and this is all they were required to do. The risks and dangers, whatever they were, so far as the record shows, were voluntarily assumed by the plaintiff, and no question is made but that he was fully capable of understanding and appreciating them, and in such case the risk was his, whatever it might be.

No employer, by an implied contract, undertakes that his machinery and appliances are safe beyond a contingency, or even that they are as safe as those of others using the same kind of machinery, "or that accidents shall not result to

those in his service from risks which, perhaps, others would guard against more effectually than it is done by him." Not only did the injured party in the case know all the danger there was in using the machine that the employers or their agents knew, but his position was such that if any change occurred or was made involving an increase of danger, he would be the first to see it; and if he continued his service after such change without protest it would be at his option, and if injured he would be remediless. "The plaintiff must be held to have understood the ordinary hazard attending his employment, and therefore to have voluntarily taken upon himself this hazard when he entered into the defendants' service."

Under the third point, had the defendants negligently furnished an unsafe machine to the plaintiff to use, under the circumstances of this case he could hardly have failed to have discovered the fact; and if he chose to continue the service after such knowledge, he assumed the consequences of the increased hazard, and he would have no cause against the defendants for injury resulting from such increased hazard.

From what has been said it will be discovered that the plaintiff's whole theory of liability in this case ( which seems to have been adopted by the court) is erroneous, and it therefore becomes unnecessary to consider the various assignments of error based upon the charge.

The judgment must be reversed and a new trial granted.

The other Justices concurred.