# THE WASHINGTON ASPHALT BLOCK AND TILE COMPANY,

*v.*

# MACKEY.

ADMINISTRATORS; DEATH BY WRONGFUL ACT; PRACTICE; GENERAL VERDICT; MASTER AND SERVANT; DAMAGES; NEGLIGENCE.

1. Letters of administration are properly granted to enable the administrator to sue for damages for the alleged negligent killing of his intestate, under the act of Congress of February 17, 1885 (23 Stat. 307), although the intestate was possessed of no goods, chattels or personal estate in this District to be administered here.

2. If there is evidence sufficient to be submitted to the jury in respect to either of two counts of a declaration, a prayer for a general verdict for the defendant upon the whole declaration can not properly be granted.

3. Where the declaration in an action by an administrator to recover damages for the alleged negligence of the defendant causing the death of the intestate, consists of two counts, the first alleging the use by the defendant, who was the employer of the intestate, of defective machinery in and about the work where the intestate was employed, whereby death was caused, and the second alleging that such machinery was of insufficient construction for the purpose intended and that other and better machinery could have been used, and there is testimony tending to support the first count, but none to support the second count, it is error for the trial court to refuse a prayer by the defendant to instruct the jury that the plaintiff is not entitled to recover on the second count, and to submit the case to the jury on both counts.

4. The test to determine the liability of an employer to his employee where the latter is injured by the use of machinery in his work, is not whether the machinery was dangerous, but whether the machinery was of the kind used ordinarily for similar work.

No. 919. Submitted October 17, 1899. Decided December 5, 1899.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia,

upon a verdict of a jury in an action by an administrator to recover damages for negligently causing the death of plaintiff's intestate. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard* for the appellant:

1. The letters of administration were void for want of jurisdiction to grant them.

The statute authorizes the granting of letters of administration in one case only, that is: " Whenever any person hath died intestate, leaving in this District, goods, chattels, or personal estate." The claim for damages presented by the plaintiff for the benefit of the widow and child was not 'goods, chattels or personal estate," authorizing the grant of letters. *Railroad Co.* v. *Swayne's Admr.,* 26 Ind. 477; *Railroad Co.* v. *Cragin,* 71 Ill. 177; *Perry* v. *Railroad Co.,* 29 Kans. 420; Courts and their Jurisdiction (Works) 453. This is a question of jurisdiction over the subject matter. *Railroad Co.* v. *Swayne's Admr.,* 26 Ind. 477; *Langworthy* v. *Baker, Admr.,* 23 Ill. 484; *McChord* v. *Fisher,* 13 B. Mon. 193; *Flinn* v. *Chase,* 4 Denio, 85. There being no jurisdiction where the lack of goods, chattels and personal estate appears on the face of the papers which invoked the grant of letters, the want of power could be shown collaterally. *Railroad Co.* v. *Perry,* 29 Kans. 420; *Crosby* v. *Leavitt,* 4 Allen, 410; *Thumb* v. *Gresham,* 2 Metc. (Ky.) 306; *Moore* v. *Philbrick,* 32 Me. 102; *Griffith* v. *Wright,* 18 Ga. 173; *Thompson* v. *Whitman,* 18 Wallace, 457.

This lack of jurisdiction is not aided by the statute authorizing recoveries in cases of deaths from negligence, which does not in terms, or by necessary implication, confer ·jurisdiction to grant letters in any other case than that already specified. There is an omission in the law, but, this will not help the plaintiff. The statute now provides

only for actions by those having lawful personal representatives. Others, that is, those who die leaving no goods, chattels or personal estate, are left as they were at common law. Congress only can cure the defect.

2. The case should have been taken from the jury. The first count charged bad order and worn condition of the trigger, by reason whereof the handle fell, but there was no sufficient evidence of bad order or worn condition.

If it be said that there was some evidence of want of repair, it was no more than a scintilla of evidence, and the time has passed when this will warrant the submission of a cause to the jury. *Improvement Co.* v. *Munson*, 14 Wall. 442; *Pleasants* v. *Fant*, 22 Wall. 116; *Randall* v. *Railroad Co.*, 109 U. S. 482; *Adams* v. *Lowery*, 74 Fed. Rep. 463. There was no proof that the handle fell because of the alleged want of repair, the fall being quite as reasonably attributable to the heavy blow on the trigger, which would have lifted it off the roller whether worn or unworn. Proof on this point was necessary. *Hyer* v. *Janesville*, 77 N. W. 729; *Hannegan* v. *Lehigh*, 41 N. E. 992.

Of all persons in employ of defendant the deceased had best means of knowing of any defect in the trigger. Where the employee has equal opportunity with the master to observe imperfections in tools or machinery, the master will not be responsible for an injury resulting from such imperfections. *Railroad Co.* v. *Barber*, 5 Ohio St. 541; *Railroad Co.* v. *Kenney*, 58 Ga. 485; *Hayden* v. *Mfg. Co.*, 29 Conn. 548; *Sweet* v. *Coal Co.*, 9 L. R. A. 861; *Priestly* v. *Fowler*, 3 M. & W. 1; *Seymour* v. *Maddox*, 5 Eng. L. & Eq. 265. Of course if Martin actually knew of the alleged defect, and remained in the service and continued to use the tub without giving notice to the master, the latter is not liable. *Railroad Co.* v. *McDade*, 135 U. S. 570.

There being no proof of notice of defect to the defendant the claim must be that the defect was obvious, and, therefore, defendant must be charged with notice. If obvious to

anyone it must have been obvious to Martin, and if he may be charged with knowledge, the master is not responsible. *Kohn* v. *McNulta*, 147 U. S. 238; *Chicago* v. *Garner*, 78 Ill. App. 281; *Coal Co.* v. *Wells*, 31 S. E. Rep. 614.

3. The second count should have been taken from the jury. The second count claims that the trigger was insufficient in its construction for the purposes for which it was used; that other and better contrivances could have been adopted and used, and that defendant negligently failed to adopt and use said other and better contrivances. *Logging Co.* v. *Schneider*, 74 Fed. Rep. 195; *Shipbuilding Co.* v. *Nutall*, 119 Penna. St. 158; *Titus* v. *Railroad Co.*, 136 Penna. St. 618; *Richards* v. *Rough*, 53 Mich. 216; *So. Pacific Co.* v. *Seley*, 152 U. S. 150.

The bucket was equipped with this device when Martin entered the employ of the company, and its operation was quite obvious. He, therefore, assumed the risk of injury from the use of the bucket in his ordinary work. *Kohn* v. *McNulta*, 147 U. S. 238; *Tuttle* v. *Railroad Co.*, 122 U. S. 189. Where the issue is whether the risk was an obvious one, a non-suit should be granted where under the evidence the question is not fairly debatable. *Johnson* v. *Snuff Co.*, 41 Atl. Rep. 936 ; *Cawley* v. *La Crosse*, 77 N. W. Rep. 179.

The requirement that a master is bound to provide reasonably "safe and suitable machinery" means only that the machinery provided shall be in reasonably good condition. *Hough* v. *Railroad Co.*, 100 U. S. 213; *Richards* v. *Rough*, 53 Mich. 216.

*Mr. Franklin H. Mackey* for the appellee :

1. The act of February 17, 1885, entitles the persons to be benefited to apply to the Orphans' Court for the appointment of an administrator for the purpose of bringing the action given by virtue of the statute, whether the deceased left goods and chattels or not; otherwise the very persons most entitled to the benefit of the statute would be excluded

therefrom. *Hutchins* v. *Railroad Co.*, 44 Minn. 5; *Railroad Co.* v. *Andrews*, 36 Conn. 213. *Stewart* v. *Railroad Co.*, 168 U. S. 449, and *Demick* v. *Railroad Co.*, 103 U. S. 11, show the liberality with which the Supreme Court will construe the statute in order to enforce the remedy. The administrator it holds to be but the nominal plaintiff, the real parties being the beneficiaries of the statute. See, also, *Ferguson* v. *Railroad Co.*, 6 App. D. C. 525, where, although the law vested all the personal property of the wife in the husband, so that at her death she leaves nothing for an administrator to administer upon, her husband taking everything by right of marriage, yet, when it became necessary to bring an action under the act of 1885, the court held that an administrator must be appointed.

2. There was no error in submitting the case to the jury. That the handle fell and struck the deceased is conceded. There is no claim whatever that the deceased or his fellow-servant were guilty of any negligence that brought about the accident. It was perfectly proper for the jury to presume that had the catch or latch been in good condition the handle of the bucket would not have fallen. *Res ipsa loquitur.* But there was direct evidence upon this point.

3. The proposition asserted by defendant's counsel that "when the employee has equal opportunity with the master to observe imperfections in tools or machinery the master will not be responsible for an injury resulting from such imperfections," is directly in the face of the doctrine of the Supreme Court in *Railroad Co.* v. *Archambault*, 170 U. S. 665.

4. That the instruction given by the court fairly submitted the case to the jury, see Shearm. & Red. on Neg., Secs. 194, 206; *Railroad Co.* v. *McDade*, 135 U. S. 554; *Mather* v. *Rillston*, 156 U. S. 391, 399; *Benzing* v. *Steinway*, 101 N. Y. 547, 552; *Railroad Co.* v. *Daniels*, 152 U. S. 684.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This action was brought under the act of Congress of February 17, 1885 (23 Stat. 307), relating to the District of Columbia, by Franklin H. Mackey, the administrator of Charles A. Martin, deceased, against the appellant, The Washington Asphalt Block and Tile Company, to recover damages for the alleged negligence of the latter, whereby the death of the said Charles A. Martin, an employee of the company, was produced.

The declaration contains two counts; the first alleging that the defendant used in and about its work, wherein the said Martin was employed as a laborer, a certain piece of machinery and appliances attached thereto, in bad and insufficient repair, whereby death was caused; and the second count alleging that said machine and appliances, used therewith was of insufficient construction for the purpose intended, and that other and better contrivances could have been adopted and used by the defendant for the purpose aforesaid; but the defendant negligently omitted the use of such other appliances.

It is alleged, that, on the 24th day of July, 1897, in this District, Martin, then being in the employ of the defendant, was engaged with others in unloading at the defendant's wharf a certain boat or scow loaded with broken stone; the manner of unloading being described thus: A number of large iron tubs or buckets were filled, each in turn with the broken stone upon the boat or scow, and then, each in turn, lifted by a steam hoisting machine from the boat to the wharf. Attached to each of these buckets was a large iron handle, working upon pivots affixed to the sides of the buckets, the handle being intended to remain in an upright position while the buckets were being filled, and to be kept in such position by a mechanical contrivance for that purpose affixed to the handle. On the day of the accident

Martin, with others, being engaged in unloading the boat, one of the co-laborers in placing or throwing the broken stones into one of the buckets, the latch or trigger affixed to the handle for its support was struck by a stone and knocked out of place; and the handle in falling struck Martin while he was standing near the bucket, and near upon the side of the scow, and knocked him over into the water, and he was drowned. It is alleged in the first count of the declaration, that this accident was without the fault of Martin, and was occasioned by reason of the bad order and worn condition of the contrivance for holding the handle in its upright position while the bucket was being filled. And it is alleged that this bad and worn condition of the appliance attached to the handle of the bucket was the result of negligence on the part of the defendant.

In the second count, after stating the employment and the manner of the accident, as in the first count, it is alleged that, by reason of said contrivance for holding the handle of the bucket in an upright position *being insufficient in its construction for the purpose for which the bucket was used,* such insufficiency being then and there unknown to Martin, the same suddenly fell from its upright position, and in so falling struck said Martin with great force, knocking him overboard, whereby his death almost immediately resulted from drowning ; and the plaintiff avers *that other and better contrivances could have been adopted and used by the defendant for the purpose aforesaid,* and the defendant *negligently failed to adopt and use such other and better contrivances,* and which negligent failure, as aforesaid, caused the injury to and death of said Martin.

The defendant pleaded the general issue plea of not guilty and that the plaintiff was not the lawful administrator of the said deceased Martin.

At the trial the plaintiff offered in evidence his letters of administration and the petition upon which the same were granted, and which petition showed upon its face that

Martin, the deceased, left no property, either real or personal. To the reading of the letters of administration in evidence the defendant objected, on the ground that it appeared from the record that the probate court was without jurisdiction to grant the letters of administration to the plaintiff, and that such letters are therefore void. But the objection was overruled, and the letters were allowed to be read in evidence, and the defendant excepted.

The defendant contends that inasmuch as the testamentary law provides that "whenever any person hath died intestate, leaving in this District, goods, chattels or personal estate," letters of · administration may be granted (Comp. Stat. p. 12, Sec. 40), where a party dies leaving no personal property here to be administered, no letters of administration can be granted, and therefore if such letters be granted, they are simply void for want of jurisdiction in the court granting them. And such has been the ruling by certain courts of the country, in the like or analogous cases. But we can not follow those decisions, however much we may respect the learning and ability of the courts.

It is true, the damages that are recoverable in such case as this may not be assets of the estate of the deceased, in any proper sense of the term. But the recovery, whatever it may be, is distributable to the family of the deceased, according to the provisions of the statute of distributions for intestate's personal estate. If, however, as seems to be the case, the recovery be had by the administrator *simply as a nominal plaintiff*, the statute confers the right to recover for the use of the beneficiaries designated, and the giving of such right to sue would seem necessarily to imply the right in the probate court to grant letters of administration to enforce the right conferred by the statute. Otherwise those most in need of the benefit of the remedy afforded by the statute might be wholly denied the right of recovery for the want of a nominal plaintiff to sue, however just their claim, or however flagrant might be the circumstances of their

case. We think such construction ought to be placed upon the statute as will preserve the right conferred thereby, and which will promote the policy of the statute, and not defeat it. We therefore entirely agree with the reasoning of the Supreme Court of Minnesota in the case of *Hutchins* v. *St. Paul RR.*, 44 Minn. 5, and of the Supreme Court of the State of Connecticut, in *Hartford & N. H. RR. Co.* v. *Andrews*, 36 Conn. 213, in which cases it was held, that letters of administration were properly granted to enable the administrator to sue and maintain an action to recover damages in respect of the death of the intestate, occasioned by alleged negligence, under statutes very similar to the Act of Congress.

We think the court was therefore right in overruling the objection to the admission in evidence of the letters of administration.

It is shown by the evidence that, on July 24, 1897, Martin, the deceased, with others, was engaged in the work of unloading a scow loaded with broken stone, at defendant's wharf; that the space between the scow and the wharf was about two and a half feet. In the work of unloading the scow a large iron tub or bucket was used, and this tub, after being filled by the men on the boat with the broken stone, was hoisted by means of a crane to a tower above, where a roller was forced against a latch or trigger of the handle of the tub, whereby the tub was dumped; the derrick or crane was operated by steam. The bucket or tub was a little heavier on the one side than on the other, so that when the trigger or latch was knocked back the tub turned almost upside down. Martin, the deceased, was at work with the witness DeVaughan, filling one tub, and the brother of the deceased and a colored man were engaged in filling another tub or bucket on a different part of the boat. Charles A. Martin, the deceased, stood right on the side of the scow, his heels touching the side of the scow as it went up and down, and he was about a foot and a half from the tub or

bucket. That the broken stones were of various sizes, some being as large as a man's head, and some considerably larger; and the witness stated that the deceased was in the act of picking up a stone, or had picked up a stone and was going to put it in the tub, when the witness threw a stone into the tub and that stone struck another stone and caused it to bound and hit the trigger holding up the handle of the tub and knocked the handle back against the deceased, and thus knocked the latter overboard; that upon being thus knocked overboard, the deceased struggled for a second or so and was drowned. That the handle of the tub or bucket is made of iron, and is about an inch and a half square, with a big eye on the top of it, in which the lift rope or cable could be fastened, and that such handle would weigh at least a hundred pounds, and was fastened on the sides like the handle of any ordinary bucket, but was held upright by a latch or trigger of iron, which works on a pivot in the handle, directly under the eye, from which it extends at right angles to the handle to and beyond the rim of the tub or bucket on one side; that in said latch is a notch or cut which, when the handle of the bucket is upright and supported by the latch, fits over and upon a small steel roller fastened to the side of the bucket, to which roller the trigger is not fastened except by pressure of its own weight; that said trigger at its upper end extends a few inches beyond said handle, and when the engine has lifted the tub or bucket into the tower this part of the trigger comes into contact with the roller and is by it pressed down so as to lift the other end of the trigger up and off the roller, and then the tub turns over. The witness also testified that the latch which supports the handle of the tub or bucket "was not in the best of order; that it had been worn some; if it had been tighter it would not have been easy to knock off." He said he had worked with the machine only three or four days, and that he had never worked at that business before. Another witness, the brother of the deceased, testified to

substantially the same facts as those just stated. A witness, of the name of Beyer, a machinist, was examined on the part of the plaintiff, and was asked the question, "Whether or not such a contrivance as this, or a pin here, or some other contrivance to prevent the handle from falling over, some simple contrivance of that sort, would suggest itself to any ordinary mechanic whose attention had been called to the matter?" To this question the defendant objected, but the objection was overruled, and the witness was allowed to answer, and the defendant excepted. Whereupon the witness proceeded to answer the question, and said: "Yes; to anyone; any common laborer would understand it." The witness further testified that the use of the latch to hold up the handle of the tub or bucket would wear it out; "that the friction roller would be smaller and then it would be easy; if you were to hit it, it would drop out." And to the further question: "Could the falling of the handle have been prevented in any easy or simple way?" the witness replied in the affirmative and said, "Why, yes," (inserting the latch by him attached to the handle of the bucket); "now it is prevented here. It could be prevented down here (indicating the side of the bucket near the lower part of the handle), by a pin or something, but this is the easiest way, to drop this down (indicating the latch). If you put a stone or something in, that would prevent its falling or dropping. Of course, when the friction roller wears away it drops out quick." This witness, however, on cross-examination, stated that he had worked with buckets like the bucket in question, but had never seen one upon which there was a catch like that which he had attached to the bucket model then in court, and had never seen one with a pin in the side, such as he had described as being sufficient to hold the handle, but the buckets he had seen in use, and like that which had been described in evidence, in use by the defendant at the time of the death of Martin, were without such a catch or pin, and made just as that bucket

was made; the buckets of that type have been in use a number of years to his knowledge, but he did not know how many years, or when they were invented, but it must have been a good many years that they have been in use.

This is the substance of all the evidence offered on the part of the plaintiff as to the form and mechanism, and the actual condition, of the tub or bucket, and the latch thereto attached, used by the defendant, and the alleged defective condition of which is supposed to have been the cause of the death of the plaintiff's intestate.

Upon this evidence the defendant moved the court to instruct the jury to return a verdict for the defendant, upon the ground that the plaintiff had failed to make out such case as entitled him to have the case submitted to the jury. This application was refused, and we think rightly so. The prayer was that the case should be instructed out of court, without any reference whatever to the different counts of the declaration. Whether there was evidence sufficient to support both counts of the declaration, or only one or neither of them, the court had to determine as a preliminary question; but if there was evidence sufficient to be submitted to the consideration of the jury in respect to either one of the counts of the declaration, a general prayer for a general verdict for the defendant upon the whole declaration could not be granted.

In this case, there is some proof, as we have shown in the recital of the testimony, though not of a very direct or positive character, applicable to the first count of the declaration. The testimony would seem to show that the latch or trigger contrivance attached to the handle of the tub or bucket was worn by use and easily displaced ; but whether to the extent of rendering the machine improper for use and unsafe to employees, by reason of such worn condition, was a question of fact for the jury. And though the evidence upon this subject was not of a direct character, because of the doubt whether the latch or trigger was displaced, which

allowed the handle to fall, by reason of the weight and force of the stone that struck it, or because of the worn and insufficient resisting force of the latch; or, in other words, because the latch was out of repair, and therefore insufficient to withstand the ordinary use of the machine, was a question of fact that could not be withdrawn from the jury. Upon this subject, it has been held by the Supreme Court of the United States, that "a case should not be withdrawn from the jury, unless the conclusion follows *as matter of law* that no recovery can be had upon *any view* which can properly be taken of the facts which the evidence tends to establish." *Gardner* v. *Mich. Cen. RR.,* 150 U. S. 349. And, conversely of this, "when the evidence given at the trial *with all the inferences* that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, then the court may direct a verdict for the defendant, but not otherwise." *Randall* v. *Baltimore & Ohio RR.,* 109 U. S. 409. But while there was some evidence to be submitted to the jury on the first count of the declaration, there was absolutely no legal or competent evidence tending to support the allegations of the second count, that the latch or contrivance for holding the handle of the tub or bucket in its upright position, was insufficient by reason of its original construction, for the purposes for which said bucket was used, and that a better contrivance could have been adopted and used by the defendant for the purpose aforesaid, but which the defendant neglected to adopt and use.

Upon the evidence, the first two prayers offered by the plaintiff, which were granted, though very general in terms, would seem to be unobjectionable. The third prayer granted at the instance of the plaintiff, in respect to the measure of damages, we do not understand to be the subject of objection. The general principle of the first two prayers would seem to be settled by a general concurrence of authority. The principle is well illustrated in a case where there was evidence tending to show that an elevator was decayed, or without

sufficient appliances, the latter having worn out, and the machine was out of running order, and an accident occurred, the question of negligence was for the jury. *Kern* v. *DeCastro & Donner Sugar Ref. Co.*, 5 N. Y. Sup., N. E. Rep. 548. But it has been held that the mere fact that the machine upon which the employee was at work broke, and hurt the employee, upon extra force being applied to it, would not justify the inference that the employer was negligent in that he had furnished an improper machine. *Duffy* v. *Upton*, 113 Mass. 544. In such case as the present there must be affirmative evidence to entitle the plaintiff to have the case submitted to a jury.

But, as we have said, we think the evidence was of a nature to be submitted to the jury on the first count of the declaration; and we are of opinion that the instructions given to the jury at the request of the defendant were amply sufficient to cover every ground of defense that could be reasonably taken and urged to the cause of action set out in that first count. But with respect to the second count of the declaration, as there was no proof legally competent to entitle the plaintiff to recover under that count, the prayer of the defendant that the jury be instructed " that on the second count of the plaintiff's declaration he was not entitled to recover, and on that count the verdict should be for the defendant, on the ground that no cause of action was shown by said count, and that the evidence was insufficient to sustain a verdict for the plaintiff on said count," should have been granted. That prayer, however, was refused, and the case was submitted to the jury on both counts of the declaration, and the verdict was a general one, and which may have been founded, for aught that appears, upon the second count of the declaration.

The court, in instructing the jury in regard to the second count, said: " In regard to the question arising under the second count of the declaration, something has been said by counsel in your presence and hearing with regard to the

employment, that the defendant should have furnished some particular fastenings or appliances to the handle and to the machinery connected with the working of this bucket. The court will not instruct you in regard to that, that it was essential *that any special particular appliance should have been adopted* in order to shield the defendant from the consequences of this accident, or to relieve it from the action of the plaintiff at this time, and will only say to you that it is the duty of the defendant in furnishing this machinery to employees to furnish them with machinery that was *so constructed and planned* as would make it reasonably safe to be used and handled by the employees, and it should have been such machinery and so regulated and planned as persons exercising ordinary care and prudence would plan and regulate in furnishing such machinery for the use of their employees. About that the jury has heard the testimony. They have seen the model produced here and have heard the testimony and explanations of the witnesses. They have heard the testimony in regard to how the accident occurred, what position the parties were in at the time, and it is for the jury *to say from the evidence, taking the evidence and giving it careful consideration, what relation, if any, the lack of the proper construction of this machinery had with the occurrence of this accident."*

In refusing the defendant's prayer as to the second count, and in giving the instruction just referred to, in regard to that count, we think the learned court fell into error. By the instruction given, the jury were allowed to speculate and determine at will what plan and construction of machinery should have been employed by the defendant in the execution of its work, with a view to the safety of its employees. The question submitted to the jury by this instruction, was not whether the latch appliance affixed for keeping the handle of the bucket in position was in good or bad repair, or if in bad repair, whether it was safe to those employed in operating it. It was permissible to the

jury, under this instruction, to conclude, and they may have
so determined, that the latch or trigger for supporting the
handle of the bucket was of improper construction, and
that some better contrivance could and ought to have been
used. It is not pretended, however, that the bucket and its
appliance, and mode of operation, constituted any novel and
untried piece of machinery, in the operation of which there
was any apparent ground for the apprehension of danger.
On the contrary, it is shown by the proof that this bucket,
with the particular appliance for operation, has been in
use, not only by the defendant, but by others, for several
years, and that it has been regarded as entirely safe. It is
true, when the conduct of a party as an employer, using
machinery in his work, amounts to negligence to the dam-
age of his employees, in failing to keep his machinery or
appliances in safe repair and operative condition, the law
holds him responsible; but his responsibility can not be
made to depend upon the varying notions or opinions of
juries as to what kind or structure of machinery he should
use in his work. Such a principle, if sustained, would tend
to embarrass all the industries of the country, that are car-
ried on by machinery, the most of which is attended with
more or less danger to those operating the machinery. This
view is taken and enforced by the Supreme Court of the
United States, in the case of *Tuttle* v. *Milwaukee R.R. Co.*, 122
U. S. 189, 194, citing the cases of *Richards* v. *Rough*, 53
Mich. 212, and *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548,
558, in which the same principle is maintained.

In the case of *Titus* v. *Bradford, etc., R.R. Co.*, 136 Penna.
St. 618, it was held by the Supreme Court of Pennsylvania,
that from the fact that a particular method or appliance
employed by a master is dangerous, it does not follow that
it is negligence for him to use it. Some employments are
essentially hazardous, and the unbending test of negligence
in methods, machinery and appliances is the ordinary usage
of the business. In the opinion, the court said: "Absolute

safety is unattainable, and employers are not insurers.  They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business.  No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man.  The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed.  Juries must necessarily determine the responsibility of individual conduct, but they can not be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community."

The same principle is very fully and clearly stated in the case of the *Miss. River Logging Co.* v. *Schneider,* 74 Fed. Rep. 195.  See, also, *South. Pac. R.R. Co.* v. *Seley,* 152 U. S. 145; *Schroeder* v. *Mich. Car Co.,* 56 Mich. 132; *Walsh* v. *Whitely,* 21 Q. B. D. 371, 378, 379.

Because of the refusal to grant the prayer of the defendant as to the plaintiff's right to recover under the second count of the declaration, and the giving of the instruction to the jury as to their right to find for the plaintiff under that count, the judgment appealed from must be reversed, and a new trial ordered, and it is so directed.

*Judgment reversed and a new trial ordered.*