Civil action to recover damages for an alleged negligent injury caused by defendant's wrongful act and resulting in the death of plaintiff's intestate.
Upon denial of liability and issues joined, the jury returned the following verdict:
"1. Was the plaintiff's intestate, Herbert W. Gerow, injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
"2. Did a violation of a Federal statute enacted for the safety of employees contribute to the injury and death of the said Herbert W. Gerow? Answer: Yes.
"3. Did the plaintiff's intestate, Herbert W. Gerow, by his own negligence, contribute to his injury and death, as alleged in the defendant's answer? Answer: ______.
"4. Did the plaintiff's intestate, Herbert W. Gerow, assume the risk of injury and death, as alleged in the defendant's answer? Answer: ______.
"5. What amount of damages, if any, is the plaintiff entitled to recover —
"(a) For the pecuniary loss suffered by his widow? Answer: $8,000.00.
"(b) For the pecuniary loss suffered by James Gerow? Answer: $8,000.00.
"(c) For the pecuniary loss suffered by Elizabeth Gerow? Answer: $8,000.00.
"6. Did the plaintiff's intestate, Herbert W. Gerow, endure conscious pain and suffering before his death as a result of the defendant's negligence, as alleged in the complaint? Answer: Yes.
"7. What amount of damages, if any, is the plaintiff entitled to recover for the conscious pain and suffering endured by the said Herbert W. Gerow? Answer: $2,250.00."
Judgment on the verdict for plaintiff. Defendant appeals, assigning errors.
This case was before us at a former term, 188 N.C. 76, when a new trial was awarded for error in the exclusion of certain evidence. The facts were reported fully at that time, and we shall not undertake to repeat them here. *Page 815 
It was conceded on the hearing that the defendant is a common carrier by railroad, engaged in interstate commerce, and that plaintiff's intestate was employed by the defendant in such commerce as a locomotive engineer at the time of his injury and death. He was killed by a boiler explosion. The case, therefore, is one arising under the Federal Employers' Liability Act and the Federal Boiler Inspection Act, and it has properly been tried under these acts. Cobia v. R. R., 188 N.C. 487. It is governed by the Federal law. Capps v. R. R., 183 N.C. p. 185. Plaintiff's intestate, a man 34 years of age, left a widow, age 31, and two small children, a son 11 years of age, and a daughter 6 years of age, him surviving, all of whom were dependent upon the deceased for support and maintenance; and his administratrix, or personal representative, is prosecuting this suit on behalf of these persons, who fall in the first class of beneficiaries under the statute. Horton v. R. R., 175 N.C. 472; Dooley v. R. R.,163 N.C. p. 463.
On 26 November, 1921, plaintiff's intestate was in charge of defendant's locomotive No. 409, drawing a freight train of cars, which left Raleigh, N.C., on that day about 7:30 p. m., going northward. After running a distance of about 18 miles the boiler of said locomotive engine suddenly and violently exploded, fatally injuring plaintiff's intestate, and causing his death 25 minutes later. He endured excruciating pain and conscious suffering from the time of the explosion until his death. The sixth and seventh issues are addressed to this feature of the case. Cobia v. R. R.,188 N.C. p. 494. Both the recovery and the amount awarded for the conscious pain and suffering of the decedent before his injuries proved fatal are supported by what was said in St. Louis Iron Mt. Ry. v. Craft,237 U.S. 648.
The explosion of the boiler is alleged and admitted. It is likewise alleged and admitted that said locomotive engine was equipped with injectors, one on the right side and one on the left side of the boiler, which were designed and intended to be used in conveying water from the water tank to the boiler of the locomotive, and that said injectors were connected with the water tank by means of certain hose, known as tank hose, which contained strainers designed and intended to prevent straw, leaves, trash, and other objects from getting into the injectors, or either of them, from the supply tank.
There is allegation to the effect that it was necessary for said injectors to be in proper repair in order to supply a sufficient quantity of water to the boiler, and in order for either of said injectors properly to perform its function it was essential that the tank hose and the strainer contained therein be and remain free and clear of all objects, such as straw, leaves, sediment, etc. It is also alleged, among other things, *Page 816 
that the defendant failed to equip and provide the manhole or tank of said engine with a strainer so as to prevent the entry of trash and other objects into the tank and thence into the tank hose, thereby rendering the locomotive unsafe to operate in the service to which it was put.
In support of these allegations, the plaintiff offered evidence tending to show that the strainers in the tank hose had been clogged or covered with trash, bagging and leaves to such an extent as to stop the flow of water from the tank to the boiler through the injectors, thus causing the explosion which resulted in the death of plaintiff's intestate. Plaintiff offered in evidence the following rule adopted for the inspection and testing of steam locomotives and tenders duly approved by orders of the Interstate Commerce Commission:
"153. (a) Feed water tanks — Tanks shall be maintained free from leaks and in safe and suitable condition for service. Suitable screens must be provided for tank wells or tank hose.
"(b) Not less frequently than once each month the interior of the tank shall be inspected and cleaned, if necessary.
"(c) Top of tender behind fuel space shall be kept clean and means provided to carry off waste water. Suitable covers shall be provided for filling holes."
That it was the duty of the defendant to have the boiler of said locomotive, and appurtenances thereof, in proper condition and safe to operate in the service to which it was put, is conceded. Sec. 2 of the Federal Boiler Inspection Act is as follows:
"From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act, to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put; that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." 36 Stat. at L., 913, ch. 103.
By amendment of 4 March, 1915, the provisions of the Boiler Inspection Act were extended to "the entire locomotive and tender and all parts and appurtenances thereof." 38 Stat. at L. 1192, ch. 169; Mangum v. R. R.,188 N.C. p. 693.
The Boiler Inspection Act was passed to promote the safety of employees, and it is to be read in connection with the Federal Employers' Liability Act. The two are companion acts. Under the latter act, *Page 817 
defendant is liable for any negligence chargeable to it which caused or contributed to cause the death of plaintiff's intestate (sec. 1); and he will not be held guilty of contributory negligence (sec. 3), or to have assumed the risk of his employment (sec. 4), if a violation of sec. 2 of the Boiler Inspection Act contributed to cause his death. Great Northern R.R. Co. v. Donaldson, 246 U.S. 121.
By sec. 2 of the Boiler Inspection Act defendant was bound absolutely to furnish what before, under the common law, it was its duty to exercise ordinary care to provide. Murphy v. Lumber Co., 186 N.C. 746. The carriers, however, were left free to determine how their boilers should be kept in proper condition for use without unnecessary danger. The things required for that purpose were not prescribed or changed by the act; but use of boilers, unless safe to operate, as specified, was made unlawful, and liability for consequences follows violation of the act.
It is conceded that there is nothing in the act or in any rule, regulation or order authorized by it which specifies the use of strainers over the manhole or intake of the tender. This, however, does not relieve the defendant of the duty to have and to keep its locomotives safe for use as required by the act.
The court, in harmony with the provisions of sec. 2 of the Boiler Inspection Act, instructed the jury that the standard of defendant's duty was to have and to keep its locomotive in proper condition and safe to operate in the service to which it was put.
There are several exceptions appearing on the record which are not altogether free from difficulty, but after a careful perusal of the entire case we are constrained to believe that they should be resolved in favor of the validity of the trial.
Probably the most serious exception is the one addressed to the following portion of the charge:
"If you shall find from the evidence, and by its greater weight, the burden being upon the plaintiff, that the defendant furnished the plaintiff's intestate with a locomotive engine without having the boiler and its appurtenances in proper condition and safe to operate in the active service of the defendant, including the injectors and other appurtenances of said boiler, or that a strainer was not provided for the tender, if such appliance was necessary to render said tender safe, that it might be employed in active service in moving traffic without unnecessary peril to life or limb, there was a violation of the statute, and if you shall find from the evidence, and by its greater weight, that such violation of the statute contributed as a proximate cause of the injury and death of the plaintiff's intestate, you will answer the second issue `Yes,' but if you are not so satisfied you will answer it `No.'" *Page 818 
The defendant contends that this instruction is in conflict with what was said in B. O. R. R. Co. v. Groeger, 69 L.Ed., 164, touching a similar instruction in regard to whether the carrier was negligent in failing to provide a fusible safety plug for the engine there in question. In speaking to the question, Mr. Justice Butler, for the Court, said:
"If the question whether the standard of duty fixed by the act required defendant to have a fusible plug in the crown sheet of the boiler were one for the determination of a jury, we think there was evidence which would sustain a verdict in the affirmative or in the negative. But we think the question was not for the jury (citing authorities). The act required a condition which would permit use of the locomotive without unnecessary danger. It left to the carrier the choice of means to be employed to effect that result. While the burden was on the plaintiff to prove a violation of the act by defendant, she was not bound to show that any particular contrivance or invention was suitable or necessary to have and keep the boiler in proper condition. There is a multitude of mechanical questions involved in determining the proper construction, maintenance, and use of the boilers, other parts of locomotives, their tenders and appurtenances, all of which are covered by the Boiler Inspection Act, as amended. Inventions are occurring frequently, and there are many devices to accomplish the same purpose. Comparative merits as to safety or utility are most difficult to determine. It is not for the courts to lay down rules which will operate to restrict the carriers in their choice of mechanical means by which their locomotives, boilers, engine tenders, and appurtenances are to be kept in proper condition. Nor are such matters to be left to the varying and uncertain opinions and verdicts of juries. The interests of the carriers will best be served by having and keeping their locomotive boilers safe; and it may well be left to their officers and engineers to decide the engineering questions involved in determining whether to use fusible plugs or other means to that end. Tuttle v. Detroit,C. H. M. R. R. Co., 122 U.S. 194, 30 L.Ed., 1116,7 Sup. Ct. Rep., 1166; Richards v. Rough, 53 Mich. 216, 18 N.W. 785. The presence or absence of a fusible plug was a matter properly to be taken into consideration in connection with other facts bearing upon the kind and condition of the boiler in determining the essential and ultimate question, i.e., whether the boiler was in the condition required by the act."
There is this distinction, however, between the two cases as we understand them. In the case at bar, it is specifically alleged that the defendant's engine was defective in that it had no strainer over the manhole or intake of the tender. The plaintiff, under our practice, is *Page 819 
entitled to recover, if at all, only upon the allegations of her complaint; and it will be observed that the instruction did not impose upon the defendant the duty of having a strainer for the tender merely because such was in general use, or because this particular engine was designed for and intended to have, a strainer, nor because the defendant was admittedly using trashy water. Richards v. Rough, 53 Mich. 212. But it was only in the event the jury should find from the evidence, in accordance with plaintiff's allegation, that such appliance was necessary to render said tender safe, that they were instructed to find for the plaintiff. This accords with the duty imposed by the statute, and the instruction merely limited the plaintiff to a recovery in case she established the allegation of her complaint. If the presence or absence of such a strainer were a circumstance properly to be taken into consideration in connection with other facts bearing upon the kind and condition of the locomotive in determining the essential and ultimate question, i. e., whether the locomotive was in the condition required by the act, we see no valid reason why the court should not specifically direct the jury's attention to the matter when it is made the subject of direct allegation.
In Great Northern Ry. Co. v. Donaldson, 246 U.S. 121, the following instruction was approved:
"Therefore, if you shall believe, from a fair preponderance of all the evidence in the case, that the boiler of the locomotive engine No. 1902 or the appurtenances thereof were not in proper condition and safe to operate in the active service of the defendant in moving traffic without unnecessary peril to life or limb, by reason of the negligence of the defendant, in any one or more of the three respects alleged in thecomplaint (italics added), then and in that case Vance H. Thomas assumed no risk of death and was guilty of no contributory negligence, and the affirmative defenses must fail."
We do not think the exception can be sustained on the present record.
The remaining exceptions and assignments of error have been carefully scrutinized. We are of opinion that all of them must be overruled. It would only be a work of supererogation to discuss them seriatim. There was no error in withdrawing from the jury's consideration the incompetent evidence previously admitted. S. v. Stewart, ante, 340, and cases there cited.
Viewing the record in its entirety, we think the verdict and judgment should be upheld.
No error. *Page 820