NEW YORK & T. S. S. Co. *v.* ANDERSON. (No. 42.)

*(Circuit Court of Appeals, Second Circuit.* February 16, 1892.)

No. 42.

1. MASTER AND SERVANT—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

In an action by a sailor for personal injuries caused by the negligent handling of a winch while the vessel was discharging cargo, it appeared that the winch was operated by a man from shore, according to whistle signals given by the sailor, and his neglect of the signals caused the injuries. Plaintiff testified that the winchman had informed him of his deafness, and requested him to whistle loudly. The winchman's carelessness had caused the breaking of some barrels before the accident in question, but up to that time (an hour or more) he had obeyed the signals as given. *Held,* that it was proper to refuse an instruction that plaintiff's continuing his work with knowledge of the winchman's incompetency would preclude a recovery, since it is for the jury to determine whether or not he was justified in believing, until the accident, that the winchman could handle the winch properly.

2. SAME—EVIDENCE—RES GESTÆ.

Statements made by the winchman to the sailor in reference to his deafness are competent evidence as part of the *res gestæ.*

3. SAME—NEGLIGENCE—EVIDENCE.

The statements as to the winchman's deafness, and his carelessness in breaking the barrels by lowering them too rapidly, are more than a *scintilla* of evidence of his incompetency, and sufficient to justify the submission of the question to the jury.

4. APPEAL—REVIEW—REFUSAL OF NEW TRIAL—EXCESSIVE VERDICT.

The circuit courts of appeals have no power to review a decision refusing to grant a new trial on the ground that the verdict was against the evidence, and was for excessive damages.

47 Fed. Rep. 38, affirmed.

Error to the Circuit Court of the United States for the Southern District of New York.

At law. Action by Charles Anderson against the New York & Texas Steamship Company for personal injuries. Verdict and judgment for $4,141.67 for plaintiff. 47 Fed. Rep. 38. Defendant brings error. Affirmed.

*Butler, Stillman & Hubbard,* (*Wilhelmus Mynderse,* of counsel,) for plaintiff in error.

*George L. Carlisle,* for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. This is a writ of error by the defendant in the court below to review a judgment of the circuit court, entered upon the verdict of a jury for the plaintiff. The plaintiff was a seaman, one of the crew of the steamship San Marcos, and while he was helping discharge cargo at the port of Key West received severe injuries by being struck by some of the cargo while it was being raised from the hold. The plaintiff recovered upon the theory that his injuries were caused by the carelessness of a fellow servant,—the winchman who had the management of the steam winch by which the cargo was being raised from the hold, —and that the defendant was negligent in that the winchman was incompetent for his place. Error is assigned because the trial judge refused to direct the jury to find a verdict for the defendant, because he refused to give certain specific instructions to the jury, requested by

the defendant, and because he refused to set aside the verdict as contrary to evidence upon the motion of the defendant for a new trial. The plaintiff was stationed on the upper deck, to receive the cargo as it reached him, loaded in slings, from the hold, conduct the slings to the side of the vessel, and start the load down the skids to the dock. Other men, some from the crew and some from the shore, were at work in the hold, filling the slings with cargo; and one Bronson, a man from the shore, had charge of the steam winch by which the cargo was hoisted and lowered. Bronson's winch was between decks, and it was his duty to operate it according to signals to be given to him by the plaintiff by blowing a steam whistle. The signal to raise a load was one blast, the signal to stop was one blast, and the signal to lower was two blasts. According to the testimony of the plaintiff, after the work had proceeded for an hour or more, and when a sling of cargo had been hoisted from the hold and conducted by him to the rail of the vessel, he blew one blast of the whistle as a signal to raise it so as to carry it over the rail. He testified that this signal was obeyed, and he then blew one blast to stop, which was not heeded, whereupon he repeated the signal almost instantly, but that Bronson, instead of stopping, lowered the sling load, and it struck the plaintiff, and led to his injuries.

The only testimony on the trial to indicate that the winchman was incompetent, because of deafness or otherwise, was given by the plaintiff himself. He testified that before commencing work Bronson told him to blow the whistle very loud, as he was deaf, and could not hear very well; that previous to the accident, while the cargo was being unloaded, some barrels were broken, because they were lowered too fast, and at that time he heard a conversation between the master of the steamship and two men standing by, in which the master asked who was at the winch, and one of them told him that the winchman did not understand how to drive a winch, and was deaf. He also testified that he could see that Bronson was not used to driving a winch, because "he seemed to be scared of the steam, and didn't know how to use it." Everything thus testified to by the plaintiff was contradicted by witnesses for the defendant, as was also his testimony respecting the circumstances of the accident.

The judge instructed the jury, in substance, that the plaintiff was not entitled to recover unless they found that the winchman was incompetent, either from deafness or otherwise, to an extent rendering him unfit for the duty to which he was assigned. He also instructed them, in substance, that the plaintiff was not entitled to recover if he was negligent himself in continuing to work after he had information of the deafness or incompetency of the winchman. No exceptions were taken by the defendant to the instructions given, but the defendant requested the judge to give three additional instructions, and excepted to his refusal to do so. Two of the instructions thus requested and refused embodied the proposition that, if the plaintiff had information that the winchman was incompetent, and continued to work without objection, he was not entitled to recover for an injury caused by the winchman's incompe-

tency. The third instruction requested and refused was covered by the instructions which the judge had already given, and does not require further consideration. After the rendition of the verdict, the defendant made a motion before the trial judge to set it aside as contrary to evidence, and for excessiveness of damages, and the motion was denied. It is doubtful whether the refusal to direct a verdict for the defendant presents any valid exception. *U. S.* v. *Bank of Metropolis*, 15 Pet. 377. No grounds were assigned as the basis for the request, and, as the defendant took no exceptions to the instructions of the judge by which he left it to the jury to decide the issues of negligence as questions of fact, it would seem that the defendant acquiesced in his view that the case could not be disposed of as one which should not be submitted to the jury. We do not think the defendant was entitled to the specific instructions asked for; following the charge to the jury, in the unqualified terms of the requests. The plaintiff, as a sailor, was amenable to rigid discipline for disobedience of orders. He was injured while discharging a duty to which he had been assigned by his superior officer, and which he was performing under the eye of the master of the ship. Notwithstanding what he had heard and observed about the deafness and inexperience of the winchman, for an hour at least, and, according to some of the witnesses, for a period of several hours, the winchman had heard and obeyed the signals, and performed his duty properly. In view of these facts, it would have been erroneous to instruct the jury that, if the plaintiff had any information that the winchman was incompetent, or had all the information which he had been shown to have, he could not recover. Irrespective of the consideration that any complaint on his part would probably have been treated as an act of insubordination, the facts presented a fair question for the jury whether, notwithstanding what he had heard and seen, he was not justified until the accident took place in believing that the winchman was sufficiently competent to manage the winch safely.

Assuming that the general request to direct a verdict for the defendant sufficiently raises the question whether there was sufficient evidence of negligence on the part of the defendant to warrant the submission of the case to the jury, we are constrained to decide that there was, although the case for the plaintiff was very weak, and was overwhelmingly disproved by the evidence introduced by the defendant, and the verdict was one which it would seem could not have been reached upon any intelligent consideration of the case. The rule is that, when the evidence given at the trial, with all the inferences that the jury can justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Randall* v. *Railroad Co.,* 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Goodlett* v. *Railroad,* 122 U. S. 391, 7 Sup. Ct. Rep. 1254. The statements made by the winchman himself were competent evidence as a part of the *res gestæ*, and the declarations of an agent of the defendant, made in the course of his duties. The jury were authorized to infer

from the circumstances of the accident, and from the previous conduct of the winchman when the barrels were broken, either that he was inattentive and careless, or that he was inexperienced, or hard of hearing. The circumstance that the load of cargo by which the plaintiff was injured was lowered contrary to his signal did not necessarily require them to infer that the winchman was deaf or inexperienced. This may have happened as well in consequence of some casual inadvertence on his part, or by his pure negligence, or by some excusable mistake; and the fact that for an hour or more previously, while operating the winch, he had heard the signals given by the plaintiff, and had managed the winch properly, gave rise to a presumption of his competency which was as cogent, if not more so, than any presumption against it arising from the fact of the accident. But if they believed that the winchman made the statement testified to by the plaintiff, we cannot say that, in conjunction with the circumstances of the accident, and his previous conduct with the winch when the barrels were broken, there was not something more than a *scintilla* of evidence of his incompetency and sufficient to justify the judge in submitting the question to the jury. *Railroad Co.* v. *Stout,* 17 Wall. 657. We regret that we have no power to review the decision of the court below in refusing to grant a new trial, based upon the grounds that the verdict was against the evidence, and was for excessive damages. *Persons* v. *Bedford,* 3 Pet. 433, 446; *Barreda* v. *Silsbee,* 21 How. 146, 167; *Insurance Co.* v. *Folsom,* 18 Wall. 237, 249; *Railroad Co.* v. *Fraloff,* 100 U. S. 24, 31.

The judgment is affirmed.